## J. B. ADOUE v. B. S. WETTERMARK.

Decided October 18, 1904.

**1.—Execution—Levy on Partnership Interest.**

The levy on the interest of a defendant in a partnership business, provided for by article 2352, Revised Statutes, can not be made by leaving a notice with the defendant in execution; and such proceeding will not support an action for damages by unlawful levy. For the protection of the execution creditor and the partner or partners whose interest is not levied upon, the notice must be left with one or more of the partners other than the defendant in execution.

**2.—Same—Levy on Land—Damages.**

In the absence of proof of special damages the statutory levy on land will not, as a general rule, authorize the recovery of damages.

**3.—Same—Actual and Exemplary Damages.**

The evidence failing to show actual damages, no recovery for exemplary damages can be had.

**4.—Same—Wrongful Levy—Malice.**

The fact that an execution creditor and his attorneys were mistaken in their construction of the judgment, and that the defendant in execution was not liable thereunder, is not in itself sufficient to sustain a charge of malice on the part of the judgment creditor or to authorize the recovery of exemplary damages for the wrongful levy of the execution.

Appeal from the District Court of Nacogdoches. Tried below before Hon. Tom C. Davis.

*Cobb & Avery* and *Geo. F. Ingraham,* for appellant.

*Blount & Garrison,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—This is a suit by appellee against appellant to recover actual and exemplary damages for the alleged wrongful levy of a writ of execution. Appellant filed a plea of privilege to be sued in Dallas County where he resided, and answered to the merits by general demurrer and general denial and various special exceptions and pleas, the nature of which, in view of the conclusion we have reached upon the facts disclosed by the record, it is unnecessary to state.

The facts shown by the record are as follows: Appellant resides in Dallas County. On April 12, 1898, he recovered a judgment in the District Court of the said county against the Petri Lumber Company for $13,882 with interest and cost and foreclosing a lien on certain machinery in possession of and claimed by Bermea Land and Lumber Company, which company was a party to the suit in which this judgment was rendered. The last named company appealed from the judgment and filed a supersedeas bond as provided by the statute. Appellee in this case was one of the sureties upon said bond. Upon a hearing of the appeal the Court of Civil Appeals for the Third District affirmed the judgment of the court below, and further adjudged "that the appellees, J. B. Adoue and the Petri Lumber Company, a corporation, recover of and from the appellant, the Bermea Land and Lumber Com-

pany, principal, and its sureties, B. S. Wettermark and Giles R. Crain, such amounts as were adjudged to them by the court below and all costs in this behalf expended, and this decision be certified below for observance."

A mandate in usual form was issued and received by the District Court of Dallas County on July 10, 1899. On July 14, 1899, the clerk of the District Court of Dallas County issued an order of sale directed to the sheriff of Nacogdoches County. This order recited all the above facts and commanded the sheriff to seize and sell the machinery on which foreclosure had been ordered, and that if the machinery could not be found or did not sell for enough to satisfy the judgment, then to make the balance out of any other property of Petri Lumber Company, Bermea Land and Lumber Company, B. S. Wettermark and Giles R. Crain, as in case of ordinary execution.

The written return of the sheriff of Nacogdoches County attached to said order of sale showed that he had sold this machinery for $1925; that he could not find any property of Petri Lumber Company, Bermea Land and Lumber Company or Giles R. Crain; that he had called upon B. S. Wettermark to point out property to levy on, which he had failed to do, and that on August 5, 1899, he had levied the writ for the balance due thereon on nineteen tracts of land as the property of B. S. Wettermark; and that on August 8, 1899, he had been served with a writ of injunction issued at the suit of Wettermark out of the District Court of Nacogdoches County, and he therefore returned the writ without a sale of the land or taking any further proceedings under it. This return did not mention anything about a levy or attempted levy on an interest in a partnership or anything else except the land. On August 8, 1899, Wettermark obtained from the District Court of Nacogdoches County an injunction restraining the sale of this land.

Upon appeal to this court this injunction suit was dismissed on the ground that the District Court of Nacogdoches County was without jurisdiction to hear and determine the cause.

After this, in 1901, the clerk of the District Court of Dallas County issued a venditioni exponas commanding the sheriff of Nacogdoches County to sell these lands previously levied upon. Sale under this was enjoined by the District Court of Dallas County, and this suit was finally affirmed by the Court of Civil Appeals, Fifth District. In July, 1899, the clerk of the District Court of Dallas County issued an abstract reciting above judgments, appeal bonds, etc., and the attorneys for Adoue had this recorded in Nacogdoches County. With reference to the above levy of the order of sale in August, 1900, the facts were as follows: Cobb & Avery were attorneys at law residing in Dallas County and were the attorneys for Adoue in the original litigation and in collecting the judgment rendered therein, and they owned an interest in these judgments. J. M. Avery of that firm attended especially to these matters. He advised Mr. Adoue as a matter of law that B. S. Wettermark had become liable for the balance of the original foreclosure judg-

ment by reason of the supersedeas appeal bond and the judgment of the Court of Civil Appeals at Austin thereon. Mr. Avery prepared the order of sale and the clerk signed and issued it in Dallas County. Avery obtained from Hoya & Gilbert, abstract and real estate men, a description of the lands levied on, and he had prepared in Dallas County a form of levy giving a description of these lands; at the same time he had prepared in Dallas County a form of notice and copy notifying Wettermark that his interest in the partnership of A. Wettermark & Son had been levied on under this order of sale; there was nothing for the sheriff to do but sign his name to these papers; Mr. Avery took these papers and went from Dallas County to Nacogdoches County and delivered the papers to Mr. Gunning, deputy sheriff, who had the order of sale in charge; the deputy signed the levy on the land and attached this paper to the order of sale; he also signed the notice and copy and took them to the place of business of A. Wettermark & Son in Nacogdoches and handed the copy to B. S. Wettermark, who read it over and handed it back to the deputy with the request to show it to his attorneys, Blount & Garrison. The deputy and Wettermark then went to the office of the latter's attorneys, and Mr. Blount asked the deputy not to serve this notice or make this levy on said interest, and threatened the sheriff with a law suit for large damages if he did; the deputy then found the sheriff, Campbell, and the deputy and sheriff then consulted their lawyer, Judge Ingraham, who advised them not to serve this notice or make this levy unless Mr. Adoue would give the sheriff an indemnity bond; the deputy then found Mr. Avery and handed back to him the notice and copy, and told Mr. Avery he would not serve this notice or make this levy on said interest unless Mr. Adoue would give the sheriff an indemnity bond. This Mr. Avery refused to do and there the matter ended. The deputy did not intend to and did not think he had made any such levy, and so told several persons who asked him about the matter.

Blount & Garrison, attorneys for Wettermark, testified that in August, 1899, they saw on this order of sale a writing to the effect that said interest in the bank had been levied on, and that when they next saw the writ this writing had been erased by having a pen and ink run through it. Nothing of the above appeared in the sheriff's return on the writ, which simply showed a levy on the land.

When Mr. Avery advised Mr. Adoue that in his opinion as a matter of law Wettermark was liable for the balance of the foreclosure judgment, Mr. Adoue told Avery that this was a question of law and he (Adoue) was no lawyer and could not decide it, but would have to leave the decision to Avery, and that if Wettermark was legally liable he wanted Wettermark to pay it, but otherwise he did not want him to do so, and that he did not want to get into any damage suits about the matter; Adoue did not know Wettermark and had never had any business with him or A. Wettermark & Son, and had no ill feeling or malice in the matter. He had nothing to do with the preparation of the order

of sale or with these levies, and gave no instructions about any of these things either to his attorneys or the clerk or to the sheriff or his deputies, and knew nothing whatever about the abstract of judgment. After the levy on the land Avery informed Adoue that this had been done, but after this suit had been brought Adoue inquired of Avery about the alleged levy on an interest in the partnership and was informed by Avery that no such levy had been made; this was all Adoue ever knew about these matters or ever authorized or ratified. Adoue was never in Nacogdoches County until 1901, when he went there to attend the trial of this case, but he only remained one day. At the time this suit was brought appellant resided with his family in Dallas County, had resided there for many years before that time, and has resided there ever since.

This suit for damages was brought in Nacogdoches County in August, 1899, a few days after the alleged levies and a few days after the suit to enjoin the sale of the land under the order of sale was filed.

The amount which the lands levied upon would have brought under a forced sale is fixed by the evidence at from $10,000 to $15,000. There is no testimony showing that any prospective sale of the lands by appellee was prevented by the levy, or that the market value of the lands was in any way affected thereby. Two persons withdrew their deposits from the bank for a short time after the levy was made, and one of the bank's customers declined to allow it to collect a draft for him. The amount of these deposits and of the draft is not shown, and there is no evidence which furnishes any basis for calculating the actual damages, if any, suffered by reason of said levy.

The trial in the court below was without a jury, and resulted in judgment in favor of appellee for $100 actual and $1900 exemplary damages.

We do not think the facts above set out, which are undisputed and are all of the material facts disclosed by the record, show any wrong to appellee for which the law gives compensation, and therefore the judgment of the court below can not be sustained.

The attempted levy on appellee's interest in the bank was never completed. The fact that the officer handed a notice of the levy to the appellee can not be regarded as a levy when such notice was immediately given back to the officer, and he, after consultation with appellee and his attorneys, determined not to make the levy, and thereafter returned the notice and copy to the attorney for the appellant and informed him that he would not make such levy. Rev. Stats., art. 2352.

If the notice had been left with Wettermark and the officer had made return upon the writ showing that he had levied upon the interest of appellee in the bank by leaving with him a notice as provided by the statute, we are of opinion that this would not have constituted a valid levy upon said interest. While the statute has never been authoritatively so construed, the opinion of the Supreme Court upon the former

appeal of this case justifies the holding that a levy upon the interest of a defendant in a business partnership can not be made under the statute by leaving a notice with the defendant in execution, but that it is necessary for the protection of the execution creditor and the partner or partners whose interest is not levied upon that the statute be construed as requiring such notice to be left with one or more of the partners other than the defendant in execution, or with a clerk of the partnership. Wettermark v. Campbell, 56 S. W. Rep., 331.

The facts failing to show any levy upon appellee's interest in the bank ,the only wrong done appellee was the statutory levy upon the land. That a levy of this character will not, as a general rule, authorize the recovery of damages is well settled. Trawick v. Martin Brown Co., 79 Texas, 460.

Appellee failed to show any special damages caused by the levy and there is nothing in the evidence to take this case from under the general rule above stated. The evidence failing to show any actual damages, there can be no recovery of exemplary damages. Girard v. Moore, 86 Texas, 675. Even if this were not the law the facts of this case would not justify a judgment for exemplary damages.

There is no evidence tending to show fraud or conspiracy to injure appellee, and none that the levy was oppressive, or that appellant was actuated by malice in procuring same. On the contrary, all the evidence shows that in procuring the levy appellant acted in perfect good faith, believing, under the advice of his counsel, that the judgment in his favor against appellee rendered by the Court of Appeals for the Third District authorized the issuance of an execution against appellee for the full amount of appellant's judgment in said cause. The fact that appellant and his attorney were mistaken in their construction of that judgment and that appellee was not liable thereunder is not in itself sufficient to sustain the charge of malice on the part of appellant or authorize the recovery against him of exemplary damages for the wrongful levy of the execution.

We are of opinion that the undisputed evidence in the case shows that appellant is not liable to appellee in any amount, and judgment should have been rendered in his favor in the court below. It is therefore ordered that the judgment of the court below be reversed and judgment here rendered in favor of appllant.

*Reversed and rendered.*