## CHICAGO, R. I. & P. R. CO. v. JACKSON.

No. 7219—Opinion Filed Jan. 9, 1917.

(162 Pac. 823.)

(Syllabus by the Court.)

### 1. Depositions—Filing—Time.

By section 5088, Rev. Laws 1910, it is provided that depositions intended to be read in evidence on the trial must be filed at least one day before the day of trial.

### 2. Depositions — Exceptions — Statement of Fees.

Exceptions to a deposition based on the fact that there is inclosed with the deposition a letter of the attorney procuring the taking of the deposition, containing a statement of the fees due the notary public, witnesses, and stenographer, incurred in taking the deposition, are without merit.

**3. Appeal and Error—Depositions—Order of Trial Court—Objection to Depositions—Conflicting Evidence.**

An order of the trial court overruling objections that depositions were not opened or published as required by law, heard and determined upon conflicting evidence, will not be disturbed on appeal.

(a) Evidence considered, and held, that the trial court did not err in overruling the motion to quash the second Harwell deposition.

**4. Evidence—Statements to Physician—Symptoms.**

A physician in giving evidence as an expert may testify to a statement made him by the patient in relation to his condition, symptoms, sensations, and feelings, both past and present, when such statements were received and were necessary to an examination, with a view to his treatment, and when made the basis, in part at least, of the physician's opinion; but such testimony cannot be considered as independent evidence of the facts stated, except in cases where the same is competent as forming a part of the res gestae.

**5. Same—Narrative—Res Gestae.**

Facts not required for a satisfactory diagnosis such as the cause of an injury, the means or manner by which it was inflicted, or which attempt to fix the responsibility for its occurrence, are regarded as a narrative of the incidents of a past transaction, and are accordingly rejected, unless made so near in point of time as to constitute a part of the res gestae.

**6. Evidence—Expert Testimony of Physician—Physical Examination.**

Expert testimony of a physician, based on a physical examination of the patient, after action instituted by him to recover damages for an alleged personal injury, though made partly for the purpose of enabling the physician to testify as a witness, is not, on that account alone, incompetent, though constituting a fact which may materially affect his credibility.

**7. Master and Servant—Action for Injuries—Evidence.**

In an action for damages for personal injuries, founded partly on alleged negligence arising out of a failure to furnish appliances for the elevation of handcars at a place of work in the repair shops of defendant company, it is error, calling for a reversal of the judgment, for the court, over objection, to admit evidence that the general foreman, shortly after the injury, ordered the building of a crane for elevating the cars in the future; such evidence being incompetent as not tending to prove prior negligence.

**8. Evidence—"Res Gestae"—Admissibility.**

Statements are not admissible as forming a part of the res gestae, when they merely concern acts which would not be admissible in evidence without such declarations. To be admissible the statements must be material and relevant. In other words, the so-called res gestae fact must itself be receivable in evidence, as one material to the issues joined.

**9. Same.**

A fact wholly irrelevant to the cause cannot be the means of introducing in evidence, as a part of the res gestae, a declaration which of itself is entirely incompetent, because mere hearsay.

**10. Same—Declarations of Agent.**

The admissions or declarations of an agent are admissible as evidence against his principal only when made in the discharge of his duties as agent, and so closely connected with the main transaction in issue as to constitute a part of the res gestae. Such admissions or declarations must be in respect to a fact competent to be established under the issues raised.

Error from District Court, Latimer County; W. H. Brown, Judge.

Action by Jennie Lee Jackson, administratrix, against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble, and K. W. Shartel, for plaintiff in error.

H. H. Smith, for defendant in error.

SHARP, J, The first error assigned involves the action of the trial court in overruling defendant's motion to quash the depositions of Drs. Rice and Ellis, taken in the month of November, 1911, because it is said: (1) The depositions were not mailed to the clerk of the court until March 5, 1912; (2) they were not transmitted by the officer taking them; (3) the certificate of the officer does not show the date on which taken; (4) said depositions were not opened or published as provided by statute; (5) the depositions were mutilated by plaintiff, in that the testimony of one Harwell was abstracted therefrom.

In answer to the first contention, it is sufficient to say that the statute only requires that a deposition intended to be read in evidence on the trial must be filed at least one day before the day of trial. Rev. Laws 1910, sec. 5088. The second contention appears to be predicated upon the fact that inclosed with the depositions was a letter addressed to the clerk of the district court, requesting him to file the depositions, and attached to which was a statement of fees due the notary, witnesses, and stenographer, incurred in the taking of the depositions. The evidence heard by the trial court on

motion to quash tends to show that the letter was not signed by plaintiff's attorney, but by the stenographer who took the depositions. Even though authorized by plaintiff's attorney, containing as it does a mere request that the clerk file the depositions with a statement of fees attached, it affords no ground whatever for quashing the depositions. The depositions as incorporated in the record do not contain the certificate of the notary; hence the third objection cannot be considered. It may be observed, however, that the depositions were taken by agreement of counsel, and that the defendant company was represented by its attorney, who cross-examined both witnesses. Objection that the certificate of the notary does not contain the day of the month on which the depositions were taken, where opposing counsel appeared and took part in the examination of the witnesses produced, is wholly without merit. The objection that the depositions were not opened or published as the law requires was decided by the trial court in favor of the plaintiff below, upon conflicting evidence. It seems that C. R. Hunt, a member of the Wilburton bar, opened the envelope containing the depositions, at the request of the attorney representing the plaintiff. Hunt testified that he indorsed the publication of the depositions on the envelope containing them, in the presence of the clerk, and that he thereupon withdrew the Harwell deposition, and mailed it to plaintiff's attorney at Shawnee. Section 5082, Rev. Laws 1910, provides that depositions shall remain under seal until opened by the clerk by order of the court, or at the request of a party to the action or proceeding, or his attorney. As Mr. Hunt represented Mr. Smith, plaintiff's attorney, in the publication of the depositions, and as there was evidence before the trial court tending to show that this was done with the knowledge of and in the presence and at the direction of the clerk, who it appears was busy at the time, the court's action upon the fourth objection will not be reversed, no claim being made that the depositions of Rice or Ellis were in any way altered or changed. The fifth objection, which affected only the original deposition of the witness Harwell, was sustained by the court, though at the time said original deposition was not on file; neither had it been since it was withdrawn by attorney Hunt on September 25, 1914.

The second assignment of error involves the action of the trial court in overruling a motion to quash the second deposition of Harwell, taken in the month of September, 1914, upon the ground that Harwell's original deposition, of November, 1911, and referred to in the second deposition as an exhibit thereto, was not on file. This was the

deposition that was sent by Hunt to Smith at Shawnee, and which was present and referred to by the attorney for the defendant company in his cross-examination of Harwell, and who was asked if in his original deposition he had not given a certain answer to a question put to him by plaintiff's attorney. His reply was that he had, but that it had been taken down wrong. A second question being propounded to him, the inquiry was made if he had not given a certain answer to it. He replied that he had, but offered an explanation as to the kind of cars referred to. At the time the second deposition was read in evidence, counsel for defendant had in his possession a copy of the Harwell deposition given in 1911, furnished by the stenographer who took it, and which counsel admitted, in the hearing upon the motion, he used in Harwell's cross-examination. No claim is made, except by possible inferences, that the questions and answers in the original or lost deposition differed from those in the defendant's possession at the trial. We cannot see wherein the defendant was prejudiced in any respect by the loss of the deposition, and are disposed to view the objection as purely technical.

The third assignment of error involves the admission in evidence of a part of the testimony of Drs. Rice and Ellis, in respect to certain expert testimony given by them. The alleged injuries sustained by the intestate occurred October 19, 1910. November 14th thereafter, Dr. Ellis, Jackson's family physician, was called in attendance. In testifying as to the former's physical condition, Dr. Ellis stated that his opinion was based both upon a physical examination of his patient, symptoms manifested, and from the history of the case given him by said patient, and that the condition could be attributed, in part at least, either to traumatism, tuberculosis, locomotor ataxia, or syphilis; and it was his belief that Jackson's death was caused from injuries sustained by him. Dr. Rice testified that at the request of plaintiff's attorney, and at the suggestion of Dr. Ellis, he called on Jackson on two occasions —April 3 and April 10, 1911—partly for the purpose of qualifying himself as an expert witness, and as advisory to Dr. Ellis; and that he considered it necessary, in his treatment of Jackson, to obtain from him a statement as to the history of his alleged injury. That the opinion of an expert witness is permissible when based on his personal knowledge of the matter under investigation, or upon competent evidence in the case, or upon both, is well settled. The question here is whether a physician who testifies as an expert should be allowed to give his expert testimony, based upon the proven history of the patient as he learned it from him

personally, in consultation with him in respect to his ailments.

It is said by Greenleaf on Evidence, sec. 162b, that the representations by a sick person of the nature, symptoms, and effects of the malady under which he is laboring at the time, are received as original evidence. If made to a medical attendant, they are of greater weight as evidence; but, if made to any other person, they are not on that account to be rejected. After discussing generally the admissibility of declarations as to bodily feelings, the competency of a medical witness to testify as an expert is treated in Jones on Evidence, sec. 349a, as follows:

"In the preceding section we alluded to the inadmissibility of a statement of a party that he suffered pain, made long after the injury; but when a physician is called as an expert his evidence is not thus limited. He may base his opinions upon the statement given him by the patient in relation to his condition and sensations, past and present. Thus only can the expert ascertain the condition of the party; and he may, of course, be guided to some extent by the data thus furnished. The declarations of the party to his physician or to other persons as to the cause of the injury, or those charging liability upon other persons, are not admissible when not made at the time of the injury. * * * The narration of past occurrences, for example, the manner in which a party has been injured, are no more competent when related to a physician than when stated to a non-professional witness."

Wigmore, in his great work on Evidence, at section 688, classifies testimony of a physician's knowledge of symptoms, based on hearsay of patients and others, under four heads: (1) Present symptoms; (2) past symptoms; (3) cause of the injury or illness; 4) statements of a nurse, or other third person. The testimony in the first two classes is held to be competent, while as to the third the author says:

"As to hearsay from the patient as to the cause of the injury or illness, no such necessity exists for accepting the testimony. In the preceding instances, certain data were necessary for the forming of an opinion as to the nature of the ailment. Here the physician, in testifying to the cause of it, would merely repeat what the patient said; but this may be shown by other evidence. Moreover, the physician's estimate of the cause, may be made independently of these statements, and, so far as it is based on them, it is a mere repetition carrying no weight of its own. There seems no reason to demand the reception of this testimony."

Upon the same subject, it is said in Chamberlayne's Modern Law of Evidence, 2635:

"Among extrajudicial statements regarding bodily condition, to which a marked degree of probative force seems to attach, are statements to physicians or surgeons as to the location and nature of a present physical condition, where made for the purpose of diagnosis and treatment. The inducement to tell the truth under such circumstances appears to the average man to be persuasive, especially in a serious matter, where a life or limb is involved."

In the same section it is further said:

"The rule excluding a narrative of past transactions applies even to statements made to physicians for the purpose of diagnosis and treatment. Facts not required for the satisfactory diagnosis, such as the cause of the injury, as to the instrument with which it was inflicted, or the like, are regarded as narrative of the incidents of a past transaction, and are accordingly rejected."

The authorities are not in harmony as to the proper limitations that should be placed upon the testimony of consulting physicians, in giving expert testimony as to the nature or probable effect of an injury. The great weight of authority appears to support the rule that statements made to a physician by a patient, as to the cause and manner of the happening of an injury, which statements are not made so near in point of time to the fact as to constitute a part of the res gestae, are not admissible in evidence. Fordyce v. McCants, 51 Ark. 509 11 S. W. 694, 4 L. R. A. 296, 14 Am. St. Rep. 69; Equitable Mut. Ass'n v. McCluskey, 1 Colo. App. 473, 29 Pac. 383; Illinois Cent. R. Co. v. Sutton, 42 Ill. 438, 92 Am. Dec. 81; Atchison, T. & S. F. R. Co. v. Frazier, 27 Kan. 463; Chapin v. Marlborough, 9 Gray (Mass.) 244, 69 Am. Dec. 281; Jones v. Portland, 88 Mich. 598, 50 N. W. 731, 16 L. R. A. 437; Weber v. St. Paul City R. Co., 67 Minn. 155, 69 N. W. 716; Fallon v. Rapid City, 17 S. D. 570, 97 N. W. 1009; Missouri, K. & T. R. Co. v. Smith (Tex. Civ. App.) 82 S. W. 787.

In many of the cases the testimony of a physician as to statements made to him by a patient in relation to the history of his case—that is, as to his past or previous condition, symptoms, sensations, and feelings— is held admissible, when sought to be introduced in connection with the physician's opinion as an expert, as furnishing a basis therefor, or for the reasons upon which such opinion is founded. Matteson v. New York Cent. R. Co., 35 N. Y. 487, 91 Am. Dec. 67; Eckles v. Bates, 26 Ala. 655; People v. Shattuck, 109 Cal. 673, 42 Pac. 315; Roosa v. Boston Loan Co., 132 Mass. 439; Cleveland, C., C. & I. R. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; Quaife v. Chicago & N. R. Co., 48 Wis. 513, 4 N. W. 658, 33 Am. Rep. 821; Barber v. Merriam, 11 Allen

(Mass.) 322; Pullman Palace Car Co. v. Smith, 79 Tex. 468, 14 S. W. 993, 13 L. R. A. 215, 23 Am. St. Rep. 356; Illinois Cent. R. Co. v. Sutton, 42 Ill. 438, 92 Am. Dec. 81; Wilkins v. Brock, 81 Vt. 332, 70 Atl. 572. See, also, Omberg v. U. S. Mut. Ass'n, 101 Ky. 303, 40 S. W. 909, 19 Ky. Law Rep. 462, 72 Am. St. Rep. 413. On the other hand, a line of authorities support the rule that the testimony of a physician as to statements made to him by a patient, concerning the history of his case, his past condition, symptoms, pain, and suffering. is hearsay and inadmissible. Atlanta, K. & N. R. Co. v. Gardner, 122 Ga. 82, 49 S. E. 818; Atchison, T. & S. F. R. Co. v. Frazier, 27 Kan. 463; Williams v. Great Northern R. Co., 68 Minn. 55. 70 N. W. 860, 37 L. R. A. 199; Grangers Life Ins. Co. v. Brown, 57 Miss. 308, 34 Am. Rep. 446; Holloway v. Kansas City, 184 Mo. 19, 82 S. W. 89; People v. Murphy, 101 N. Y. 126, 4 N. E. 326. 54 Am. Rep. 661; Lush v. McDaniel, 35 N. C. 487, 57 Am. Dec. 566.

Aside from the question of the statements in proper cases being admissible as a part of the res gestae, the correct rule, it would appear, should permit a physician to testify to a statement or narrative given him by his patient in relation to his condition, symptoms, sensations, and feelings, both past and present, when made in connection with his own opinion as to the cause of the injury, though the statement may not be received as independent evidence to establish the fact of the injury. When made the basis, in part at least, of the physician's opinion, such testimony is admissible from necessity, because in this way only can the bodily condition of the party, who is the subject of the injury, be ascertained. The rule should not, however, be extended beyond the necessity upon which it is founded. In such circumstances, and indeed whenever declarations are admissible, it is for the jury to determine whether they express the real feelings of the party, or whether they are feigned; and for obvious reasons, whenever there appears a motive to manufacture testimony, the declarations should be subject to the closest scrutiny. Jones on Evidence, sec. 349a. On the other hand, facts not required for a satisfactory diagnosis, such as the cause of an injury, as to the instrument with which it was inflicted, or the like, constituting a narrative of the incidents of a past transaction, are incompetent. That the visits of Dr. Rice and his examination of Jackson took place after the latter had brought suit against the railroad company for damages, and to enable him to testify as a witness at the trial, did not on that account alone render his testimony incompetent, though constituting a fact which the jury might consider as materially affecting its credibility. Matteson v. New York

Cent. R. Co., 35 N. Y. 487, 91 Am. Dec. 69; Cleveland, C., C. & I. R. Co. v. Newell, 104 Ind. 264, 3 N. E. 836, 54 Am. Rep. 312; Quaife v. Chicago & N. R. Co., 48 Wis. 513, 4 N. W. 658, 33 Am. Rep. 821; Barber v. Merriam, 11 Allen (Mass.) 322.

While the physicians' testimony in part is based upon narrative, involving the history of the case given them by Jackson, it does not appear that the latter undertook to state the occasion of his injury, or its cause, or the circumstances under which it occurred, or who was responsible for its happening. In other words, the evidence does not disclose that the narrative (if such it may properly be called) included other than such facts as were necessary to enable the physicians to satisfactorily diagnose and treat the case, and did not attempt to give its cause, or to place responsibility for its occurrence.

The only witness to the accident, produced at the trial, was Harwell, whose deposition has been considered, and who at the time of the injury was a carpenter employed in the railroad shops in which Jackson worked, who testified that for three years previous to the occasion of Jackson's alleged injury the hand cars being repaired in the shops were lifted up and turned over on trestles or horses by manual labor, without the use of machinery. Over the objection of the defendant company, the witness was permitted to testify that the hand cars could have been elevated by the use of a pulley or crane; that one Milton was the general foreman in the car department; that at about the time of the accident, or after it had occurred, Milton was in the vicinity of the shop where the hand cars were being handled; and that Milton inquired if there could not be, as expressed by him, "some way fixed to turn them (meaning the hand cars) without lifting them that way." Being interrogated in respect to what was done, Harwell answered that Milton ordered Hill to build a crane for lifting or raising the cars. As Milton was the general foreman of that department, and presumably had the authority to direct the erection of a crane, it is insisted that the evidence tending to show that subsequent changes in the means employed in the work, in the way of precautions, comes within the rule stated by this court in City of Wynnewood v. Cox, 31 Okla. 563, 122 Pac. 528, Ann. Cas. 1913E. 349; Missouri, K. & T. R. Co. v. Johnson et al., 34 Okla. 582, 126 Pac. 587; Sloan v. Warrenburg, 36 Okla. 523, 129 Pac. 720; and Shawnee Gas & Electric Co. v. Motesenbocker, 41 Okla. 454. 138 Pac. 790—making the admission of such evidence incompetent and prejudicial. Though involving a somewhat different state of facts, it would seem that the case is

ruled by the foregoing decisions. No sound distinction can be made between proof of the fact of actual installation of repairs and precautions subsequent to the accident, and evidence that one in authority directed their installation. The purpose of the evidence and the natural inference deducible therefrom in both cases is the same: That the fact may be considered in the nature of an admission of prior negligence. In the case first named, plaintiff had brought an action for damages alleged to have been caused by being struck by a bolt of lightning which had gathered on the wires of the electric light plant, and by them conveyed into the plant, where the plaintiff was working, thereby causing his injuries. The specific negligence averred was that the defendant was negligent in that it had failed to install an adequate number of lightning arrestors. Over objection, plaintiff was permitted to prove that, immediately after the accident, defendant installed a number of additional lightning arrestors. The admission of this evidence was held to constitute error, for the reason that the testimony of subsequent repairs, made after the happening of an accident causing the injury, was not admissible to prove antecedent negligence. In Sloan v. Warrenburg, supra, plaintiff was permitted, upon cross-examination of one of defendant's witnesses, to show that after the accident the telephone pole was replaced on the roof, and, instead of being fastened in the same manner as before, a hole was cut in the roof, and the pole was securely tied to the joists which supported the roof. This, it was held, was error; the court saying:

"Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reasonable care under the circumstances existing at the time, not whether he had done everything which it was possible to do in the light of every possible danger that might arise. It may well be that after an accident has actually happened, in order to prevent its recurrence, an owner might exercise extraordinary care, and in so doing take precautions which would never have occurred to him but for the accident, and which are not usually observed in the business. A party's conduct must be judged by the circumstances, conditions, and duties existing at the time, and which are known to him, or in the exercise of reasonable care should be known to him; and therefore it is almost universally held that precautions taken after an accident are not admissible in evidence as tending to show negligence before the accident."

To admit testimony of subsequent repairs or precautions would tend to discourage all endeavor to improve existing conditions, penalize any effort in such direction, and deny to the employer the benefit of light shed by experience. An employer may have exercised all the care which the law requires, and

yet, in view of a new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards or install more modern appliances for use in the business. The more careful an employer is, the more regard he has for the lives of his employes; the more likely he would be to feel a deep concern for their safety. It would therefore be unjust that he should not do so without being liable to have such acts construed as an admission of prior negligence. As said in Lake v. Shenango Furnace Co., 160 Fed. 887, 88 C. C. A. 69:

"But evidence that, after the accident, a master repaired his machinery, adopted a different method of operation, or employed a larger number of men in conducting his business, is incompetent because it has no legitimate tendency to prove that the number of men employed, the method pursued, or the machinery used before the accident was not reasonably safe and sufficient, and because the reception of such evidence would deter the master from improving his methods and machinery."

In the Cox Case, it was contended that the admission of the evidence, if erroneous, was harmless and could not therefore have been prejudicial. In answer it was said that, whether there was or was not a sufficient number of lightning arrestors, the jury would be inclined to promptly conclude, when the city, after the injury which was charged to have been occasioned by a deficient number of such appliances, immediately increased their number, that this was proof "as true as holy writ" that the claim of plaintiff must be true. The opinion cites a large number of cases of different courts holding that evidence of subsequent repairs and precautions adopted is inadmissible, and that its reception is not harmless, but prejudicial, and in which is included the case Columbia & Puget Sound Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405, where it was held that a subsequent alteration or repair of the machine by the defendant was not competent evidence of negligence in its original construction. The court said:

"But it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant"

—and held that incompetent evidence, admitted over the defendant's objection, which

bore upon one of the principal issues of the trial, and tended to prejudice the jury against the defendant, constituted error for which the judgment must be reversed.

The same claim was urged in the Sloan Case, answering which Judge Ames said:

"The plaintiff, however, argues that the error was harmless; but we cannot agree with this contention. The primary issue in the case was the question of the defendants' negligence, and it is altogether possible that on the evidence the jury might have found that the defendants were not negligent if this incompetent evidence had not been admitted. The unanimity with which the courts have excluded said evidence of itself indicates the belief that it is material, and one only has to consult his own common sense to perceive that when the court has treated this evidence as competent a jury will naturally regard it as material; and, while we uniformly decline to reverse a case because of an error which is not prejudicial, it seems apparent to us in this case that this error was prejudicial, and that the judgment of the trial court should be reversed and the cause remanded."

At the time of his death, Jackson was 50 years of age. The verdict was for $3,500, and was signed by but nine jurors. While the considerations that moved the different jurors in reaching or disagreeing upon the verdict may not be open to inquiry, it is fairly within our province to say, after a searching examination of the record, that plaintiff's evidence, upon which the defendant company's liability was found by the jury, is at best vague and uncertain. Testimony having no legitimate bearing upon the defendant company's negligence, the natural tendency of which was undoubtedly to prejudice and influence the jury, because of the failure of the company to have previously adopted the safeguards complained of, and which alleged omission of duty constituted one of the grounds of negligence relied upon, undoubtedly had an important bearing upon the minds of the jury. And the cause of the injury, whether the result of an accident or of actionable negligence, being in doubt, it is obvious that the jury, or those members concurring in the verdict, would be quick to seize upon the statement of the general foreman, in respect to a new device for doing the work, as some evidence of previous negligence.

But it is said that Milton's statement, as given in evidence by Harwell, formed a part of the res gestae, and for that reason was admissible. Were Milton's statements, as narrated by Harwell, admissible either as forming a part of the res gestae, or as an admission of an agent? Taking up the first question, it may be well to note that the most frequent application of the use of the phrase "res gestae" is to hearsay exception for spontaneous exclamations. This exception seems first to have been recognized in Thompson v. Trevanion, Skin. 402, in 1693, where the action was for the battery and wounding of the wife, and in which Lord Chief Justice Holt "allowed that what the wife said immediate upon the hurt received, and before she had time to contrive or devise anything for her own advantage, might be given in evidence." Nevertheless the development of this doctrine did not begin until after Aveson v. Kinnaird, 6 East, 191-197, in 1805, when the phrase in question had begun to be freely used in connection with it; and only since about 1850, according to Wigmore, has it been possible to say that this exception was firmly established. The general principle of this exception to the rule forbidding the introduction of hearsay evidence is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony. The ordinary situation presenting these conditions is an affray or a railroad accident, but the principle itself is a broad one. Its phrasings differ widely in different courts, but there is in the judicial opinion of today something of an approach to uniformity. In essence, the language of Lord Holt, in Thompson v. Trevanion, still serves to indicate clearly and concisely the principle of the exception. Wigmore on Evidence. sec. 1747. The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the asserter becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply. The utterance is then merely not obnoxious to the rule. It may or may not be received, according as it has any relevancy in the case. It is said in Wigmore on Evidence. sec. 1772, that a sec-

ond kind of situation in which utterances are not offered testimonially arises when the utterance accompanies conduct to which it is desired to attach some legal effect. The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more precisely ascertained by considering the words accompanying it. The utterance thus enters merely as a verbal part of the act, or, in the common phrase, a "'verbal act." As said by this court in Wynnewood v. Cox:

"'Res gestae' * * * are events speaking for themselves, through the instinctive words and acts of participants, not the words and acts of participants when narrating the events. What is done or said by participants, under the immediate spur of a transaction, becomes thus part of the transaction, because it is then the transaction that speaks. In such cases, it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted. What they did or said is not hearsay; it is part of the transaction itself."

After reviewing a number of cases from the Supreme Courts of Texas, Missouri, and Mississippi, the territorial Supreme Court, in Smith v. Territory, 11 Okla. 669, 69 Pac. 805, announced the rule that declarations to become a part of the res gestae must accompany the act which they are supposed to characterize and explain, and to make such declarations competent as evidence they must exclude the idea of narration of past occurrences or events. To constitute a part of the res gestae, two things must occur, namely, (1) the accompanying acts, and (2) the declarations attending the whole transaction. In Smith v. Chicago, R. I. & P. R. Co., 42 Okla. 577, 142 Pac. 398, it is said that declarations of a party injured, made subsequent to receiving the injury, if wanting in spontaneity and instinctiveness, are but the party speaking about the facts and not the facts speaking through the party, and form no part of the res gestae, but are self-serving declarations, and as such are properly rejected as evidence. See, also, Coalgate Co. v. Hurst, 25 Okla. 588, 107 Pac. 657.

That the statements or acts must be a part of the transaction is thus stated in Jones on Evidence, sec. 348:

"From whatever point of view a given circumstance is regarded in connection with its admissibility as one of the res gestae, it is absolutely essential that the claim shall be founded on its being one of the immediate family of facts which relevantly constitute the real subject-matter. Does it belong to it, or has it only a distant relation and relevancy? If it is no part, then the admission, if at all, must be based on ground other than res gestae. Although, as we have seen, dif-

ferent tribunals do not agree as to the degree of strictness or liberality with which they apply the rule that the declaration should be contemporaneous with the transaction in issue, there is no doubt but that the declaration must be a part of such transaction, and that it must illustrate or explain it. The declarations must be calculated to unfold the nature and quality of the facts which they are intended to explain; they must so harmonize with those facts as to form one transaction. There must be a transaction of which they are considered a part; they must be concomitant with the principal act, and so connected with it as to be regarded as the result and consequence of co-existing motives. * * * Hence, if there is reason to suppose that the declarations are not the natural and spontaneous utterance of the declarant, but that they are premeditated or designed for a purpose, they are inadmissible; and, if sufficient time has elapsed to give an opportunity for deliberation or the fabrication of evidence, the declarations cannot be deemed a part of the res gestae."

Obviously, the testimony as to the statement of the foreman falls far short of the requirements of the rule making the statement admissible. It was not a spontaneous exclamation of the foreman, made contemporaneously with the injury. Indeed, it does not affirmatively appear that Milton saw or even immediately knew of the injury. The nearest approach to proof of the time of the statement is to be gathered from the following questions and answers:

"Q. Do you remember whether Mr. Milton was around there about that time, or after that time? A. He was somewhere between the hand car shop and the planing mill. Q. Do you know whether he made any statement in reference to that work there at that time, as to the elevation of those cars? A. He said something about it. He wanted to know if there couldn't be some way fixed to turn them without lifting them that way. Q. And do you know whether anything was done at that time or not? A. Nothing more than Milton ordered Hill to build one to be used there in elevating the cars. Q. That is, build one what? A. A crane, I suppose."

Milton's statement to a fellow employe involved only the inquiry as to how a repetition of the occurrence could be avoided, and directions given to that end. It had to do, not in explanation of the injury, or its cause, but of the future; of that which would in the belief of the foreman do away with the recurrence of another injury. It was not a verbal part of the act, nor had it anything to do with the occasion of the injury, except as that was remotely related to the subsequent precautions. But we think a still further reason exists why the statement of Milton was incompetent. Its sole purpose was to prove the subsequent precautions or-

dered installed by the foreman, and was not therefore provable under any circumstances arising in the case. Declarations are not admissible as a part of the res gestae, when they merely concern acts which would not be admissible in evidence without such declarations. Jones on Evidence, sec. 348. Discussing utterances constituting a verbal part of an act, it is said in Wigmore on Evidence, sec. 1772, that the conduct to be characterized by the words must be independently material to the issue, and in the following section we read:

"As a necessary deduction from the above principle, the conduct that is to be made definite must be independently material and provable under the issues, either as a fact directly in issue, or as incidentally and evidentially relevant to the issue. The use of the words is wholly subsidiary and appurtenant to the use of the conduct. The former without the latter have no place in the case, and could only serve in direct violation of the rule."

The rule admitting statements as part of the res gestae requires, as commonly formulated, that the so-called res gestae fact should itself be receivable in evidence, as one material to the issue raised in the case. Chamberlayne on Evidence, sec. 2995; Lund v. Tyngsborough, 9 Cush. (Mass.) 36; Fail v. McArthur, 31 Ala. 26; Gilbert v. Gilbert, 22 Ala. 529, 58 Am. Dec. 268; Alabama Great Southern R. Co. v. Hawk, 72 Ala. 112, 47 Am. Rep. 403; Pinney v. Jones, 64 Conn. 545, 30 Atl. 762, 42 Am. St. Rep. 209; State v. Ridgely, 2 Har. & McH. (Md.) 120, 1 Am. Dec. 372; Ordway v. Sanders, 58 N. H. 132; Patten v. Ferguson, 18 N. H. 528; People v. Williams, 3 Park, Cr. R. (N. Y.) 84; State v. Frazier, Houst. Cr. Cas. (Del.) 176; Jones v State, 71 Ind. 66; State v. Whitt, 113 N. C. 716, 18 S. E. 715; Reg. v. Beddingfield, 14 Cox Cr. C. 341.

Was the statement of Milton admissible as the statement of an agent? The principle on which the declarations or acts or representations of an agent, within the scope of his authority, are admitted to be proved, is that he who sets another person to do an act in his stead as agent is chargeable by such acts as are done under that authority, and so, too, is affected by omissions made by the agent in the course of exercising that authority. As state in Franklin Bank v. Pennsylvania D. & M. S. N. Co., 11 Gill & J. (Md.) 28, 33 Am. Dec. 687, cited with approval by Wigmore:

"The principle upon which the declarations or representations of an agent, within the scope of his authority, are admitted to be proved, is that such declarations, as well

as his acts, are considered and treated as the declarations of his principal. What is so done by an agent is done by the principal through him, as his mere instrument. So whatever is said by an agent, either in the making of a contract for his principal, or at the time, and accompanying the performance of any act, within the scope of his authority, having relation to, and connected with and in the course of, the particular contract or transaction in which he is then engaged, is in legal effect said by his principal, and admissible in evidence; not merely because it is the declaration or admission of an agent, but on the ground that, being made at the time of and accompanying the contract or transaction, it is treated as the declaration or admission of the principal, constituting a part of the res gestae, a part of the contract or transaction, and as binding upon him as if in fact made by himself."

Assuming the general authority of the agent, and overlooking the time, with respect to the injury, at which the statement was made, the so-called admission proves nothing. It does not tend to explain the nature of Jackson's injury, or its cause. In short, it does not refer to the injury, and is, as we have seen, but distantly related to it. Though the statement had been one of the principal himself, it would not have been competent, because the fact sought to be proved by it was incompetent. The material inquiry to which the evidence was directed was that of the company's culpability. This it was sought to establish by inference based on inadmissible proof. This can no more be done under the guise of an admission of an agent, than under the claim that the statement constituted a part of the res gestae. The ultimate fact involved the company's actionable negligence, a fact wholly disassociated in law from the subsequent change in appliances directed by the foreman. Being independent of the cause that contributed to the injury, the statement was irrelevant as not tending to establish a fact in issue. Admitting the one did not prove or tend to prove, even by inference, the existence of the other. Such being the case, and the evidence being highly prejudicial it was error calling for a reversal of the judgment, to admit the testimony of the witness Harwell as to the statements of Milton, without regard to the ground upon which the same may be placed.

In view of our conclusions, errors, arising upon the instructions given and refused, need not be considered.

The judgment is reversed, and the cause remanded for a new trial.

All the Justices concur.