## A & A CHECKER CAB OPERATING CO.
### v.
### FRITZSHALL.
#### No. 35866.

Supreme Court of Oklahoma.

Nov. 3, 1953.

Rehearing Denied Dec. 8, 1953.

Jack High, Granville Tomerlin, Oklahoma City, for plaintiff in error.

Pierce, Mock & Duncan, Oklahoma City, Stevens & Winterringer, Shawnee, for defendant in error.

O'NEAL, Justice.

The plaintiff below, Frances Fritzshall, recovered a verdict against the A & A Checker Cab Operating Company in the sum of $25,901.64. The trial court required plaintiff to make a remittitur in the sum of $7,000, and after overruling defendant's motion for a new trial entered judgment in favor of the plaintiff in the sum of $18,901.64. The action sounded in tort for damages for personal injuries alleged to have been received by the plaintiff while riding in defendant's cab as a passenger for hire.

The defendant at the trial formally admitted the negligence of its agent and servant in the operation of the cab, and its liability for damages resulting from the accident and injuries received by plaintiff. Defendant does not contest the item of $901.64 as a financial loss to plaintiff covering her medical and hospital expenses, but contends that the evidence with reference to plaintiff's recovery for pain and suffering cannot be sustained.

In this appeal defendant requests this court to reverse the case, with directions to grant a new trial upon the following ground:

"The trial court, contrary to the well-established rule of this Court and

substantially every other jurisdiction in the United States, over appropriate objections, permitted the plaintiff to offer as direct evidence of the plaintiff's past pain, suffering and symptoms narrative hearsay statements attributed to the plaintiff by two doctors who had not treated the plaintiff but who had examined the plaintiff for the purpose of qualifying to testify in plaintiff's behalf as expert witnesses."

An examination of the record discloses that five physicians and surgeons were called to testify in behalf of the plaintiff, and three in behalf of the defendant. Defendant contends that the testimony of Dr. M. and Dr. P., who were not treating physicians, was incompetent and inadmissible for the reason that it was based, at least in part, on plaintiff's declaration of past pain and suffering; that such statements were hearsay, incompetent and of sufficient prejudice to deny defendant a fair trial.

Doctors G., W. and M. were physicians and surgeons who treated plaintiff's injuries growing out of the accident. Each of these physicians testified that from the statements made by the plaintiff, and from a physical examination of the patient, they diagnosed plaintiff's injury as a post concussion, and as a sacral-lumbar injury. Dr. G. testified that an x-ray was taken of the plaintiff and that from his examination and his observation of the plaintiff he concluded:

"My opinion is that she sustained an injury, and my diagnosis is that it is a post concussion—that a post concussion condition exists there, and that she also has a sacral-lumbar injury of the type that causes the backache; the symptoms of dizziness and headaches, are post concussion—due to a post concussion state, and that post concussion state and the condition in her back, causing her backache, are all due to the injury."

We find ample evidence in the record to sustain the verdict and judgment rendered thereon, unless the evidence of Dr. M. and P. was incompetent, resulting in prejudicial error as contended by the defendant.

Referring briefly to plaintiff's evidence and a companion passenger in defendant's cab at the time of the accident, it is shown that the cab travelling at an excessive rate of speed hit a dip in the pavement causing plaintiff to hit her head on the top of the cab; that on a second bounce the cab doors flew open and she was thrown against an arm rest on the inside of the cab; that she immediately thereafter complained of pain in her back and lower spine, and has suffered constant pain in her back and head and has become very nervous and irritable.

An examination of Dr. M.'s, as well as Dr. P.'s testimony, when viewed in its entirety, does not sustain defendant's contention that they gave direct evidence of plaintiff's past pain based upon her narrative statement. Their testimony discloses that the statements made by plaintiff of subjective sensations were in part her case history necessarily to be taken into consideration by these men of science in their subsequent examination of her physical and mental condition. Dr. M., after stating that plaintiff's complaint consisted of headache, dizziness and backache, further stated that he made several complete examinations of her body from head to foot, and from these examinations he found she had pain over her sacrum; that he discovered a pronounced tenderness by applying pressure upon the posterior section of the body. Specifically, he testified:

"Examination revealed a tenderness on pressure, associated with muscle spasm and limited motion of the lumbar portion of her back. Increased motion or attempted activity to this portion of her back increased her pain and increased her muscle spasm."

He further testified that from a reading of an x-ray taken of the patient he found a line crack in the sacrum; that it would require a blow of some force to fracture this bone structure.

We think a reading of Dr. M.'s evidence sustains plaintiff's contention that his opinion or expert testimony was not based upon any narrative statement made by plaintiff to him, but upon his independent diagnosis of the patient.

What we have heretofore said with reference to M.'s testimony applies with equal force to the testimony of Dr. P., who made a complete neurological and psychiatric examination of the plaintiff.

The extra judicial statements regarding bodily conditions, to which a marked degree of probative force seems to attach, are statements to physicians as to the location and nature of a present physical condition when made for diagnosis and treatment. The question likewise arises where extra judicial statements regarding past or present conditions, symptoms, sensations and feelings are made to a physician not for treatment but to qualify the physician in connection with his independent physical examination of the patient to subsequently testify as an expert witness. The latter question was presented to this court in Chicago, R. I. & P. R. Co. v. Jackson, 1917, 63 Okl. 32, 162 P. 823. In that case Jackson sued the Railway Company to recover damages for personal injuries received in the course of his employment. Dr. E., Jackson's personal physician, who treated him for such injuries, testified that he based his judgment as to the cause of death from a history of the case given him by the patient, and upon the physical examinations of the patient made by him; that in his judgment death resulted from the injuries sustained. Dr. R. testified that at Dr. E.'s request he examined the patient on two occasions. These examinations were made to qualify Dr. R. to testify as an expert witness, and also as advisory to Dr. E. At Dr. R.'s request the patient detailed the history of his alleged injury. The question was thus posed whether a physician who testified as an expert should be allowed to give his expert testimony, based upon the proven history of the patient as he learned it from him personally, in consultation with him in respect to his ailments.

The opinion discloses much research as it cites the majority and minority holdings of the courts upon this question. We think everything that might well be said upon that question was there well said. In that case, we held:

"Expert testimony of a physician, based on a physical examination of the patient, after action instituted by him to recover damages for an alleged personal injury, though made partly for the purpose of enabling the physician to testify as a witness, is not, on that account alone, incompetent, though constituting a fact which may materially affect his credibility."

■ The identical question was again presented (1951) in the case of Danner v. Chandler, 205 Okl. 185, 236 P.2d 503. We there re-examined our holding in Chicago, R. I. & P. R. Co. v. Jackson, supra, and upon its authority held:

"In an action to recover damages for personal injury testimony of a physician as to his medical conclusions, based in part upon the statements made by the patient in giving a history of the case to the physician at the time of examination, though the examination was not made for the purpose of treating the patient but was made for the purpose of qualifying the physician to testify as an expert witness, is admissible in evidence."

The same rule has been followed in cases arising in the administration of the Workmen's Compensation law, 185 O.S.1951 § 1 et seq. Sutherland Lumber Co. v. Roberts, 167 Okl. 646, 31 P.2d 581; Quality Ice Cream Co. v. Jones, 155 Okl. 197, 8 P.2d 751; Bartlett-Collins Glass Co. v. Washabaugh, 166 Okl. 90, 26 P.2d 420; Orth, Kleifeker & Wallace v. Scott, 173 Okl. 448, 49 P.2d 112.

■ In some respects the medical testimony presented by eight physicians and surgeons is in direct contradiction, but all of their testimony goes to the pivotal question of whether the plaintiff suffered physical injuries and the extent thereof, and that issue was properly submitted to the jury. We cannot say that the issue so presented was resolved contrary to the weight of the evidence.

Finding no substantial error in the record, the judgment is affirmed.

HALLEY, C. J., and WELCH, CORN, DAVISON, WILLIAMS and BLACKBIRD, JJ., concur.