QUAIFE and wife vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

*February 6 — February 24, 1880.*

INJURIES FROM NEGLIGENCE: EVIDENCE. *(1) Degree of proof required. (2, 3) Testimony of physicians and surgeons as experts. (2) Whether witness may form judgment from words as well as acts of person examined by him. (3) Cross-examination of party's own witness. (4) Excessive damages.*

1. In actions for injuries from negligence, as in other civil actions, all issues of fact are to be determined by the jury upon the preponderance of evidence; and it is not necessary that defendant's negligence should be proven beyond a reasonable doubt.

2. In such an action, the injured person complained of pain and weakness in the hip joint, continuing from the time of the accident to that of the trial; and, *at the request of the defendant*, she submitted to an examination, during the trial, by a number of physicians and surgeons, one-half of them selected by herself and the others by the defense, who all testified that there was no appearance in the hip of physical conditions that would cause 'the pain complained of. One of those summoned by the plaintiff was then permitted, against objection, to testify that he thought he could tell whether or not she suffered pain from the movement of the hip, judging from all the examination, *including what she said;* and that she gave every indication of suffering pain; that in his opinion she did so suffer; and that the pain, if it existed, indicated some trouble in the hip joint. *Held,* that the evidence was properly admitted.

3. Another of said surgeons, called by the plaintiffs, having testified that in the examination he had discovered nothing in the subject's physical condition which indicated that she was then suffering from the alleged injury, was asked whether there might not have been a fracture of the femur without his having been able to discover it; and he answered, in substance, that it was possible but not probable. *Held,* that it was within the discretion of the court to allow the question, though in the nature of a cross-examination of the party's own witness.

VOL. XLVIII. — 33

4. The jury having apparently found that the injuries complained of were serious and permanent, and having awarded plaintiffs a verdict for $1,800, this court, not being able to say that the finding was unsupported by the evidence, cannot hold the damages excessive.

APPEAL from the Circuit Court for *Monroe* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought to recover damages on account of injuries alleged to have been sustained by the plaintiffs by reason of the negligence of the defendant in not keeping a sufficient platform at Glendale, in this state, a station on its road at which passengers were accustomed to get on and off its trains.

"The facts shown upon the trial were, that the defendant had constructed a platform at Glendale, about one hundred and five feet long and about six feet wide, the north end of which was about three feet above the ground, with no rail or other guard, and with no stationary or other light kept thereon at night when the passenger train stopped to receive and discharge passengers at that place; the only lights being those carried in the hands of the station agent, conductor and brakemen. On the 29th of March, 1878, the passenger train going south stopped at Glendale to discharge and receive passengers in the night-time. The plaintiffs were at Glendale, and desired to take the train for Elroy. In drawing up to the platform, the train was stopped so that the forward end of the ladies' car did not come up to the north end of the platform by about two feet. The plaintiffs, in approaching the train to get on board, started for the forward end of the ladies' car; and *Mrs. Quaife*, being a little in advance, in attempting to get upon the steps of such car, stepped off the end of the platform and fell the distance of three feet or more, and received the injuries complained of.

"On the part of the defendant it is claimed that the evidence shows that a brakeman stood on the platform near the forward end of the ladies' car, with a lamp in his hand, and

spoke to *Mrs. Quaife* as she approached the cars, and told her there was not room to get on there, and to get on to the other step — that is, the step at the rear end of the smoking car, immediately in front of the ladies' car; that he told her that was the end of the platform; that she said "Yes," and stopped for a moment; that the brakeman stepped a 'ound to the steps of the smoking car; that *Mrs. Quaife* stopped and talked with some one; and that when the conductor called "all aboard," she started and walked off the end of the platform. The evidence shows that quite a large number of persons were on the platform when the train stopped; that the train made a very short stop; and that there was considerable hurrying to get aboard the train, and the night was dark. *Mr. Quaife* disputes the statement of the brakeman, and says that the brakeman stood on the front end of the ladies' car, and not on the platform, and thinks his lamp was standing on the platform of the car, and that *Mrs. Quaife* started for the steps of the ladies' car when she fell off the platform. *Mrs. Quaife* swears she did not notice the brakeman at all, and did not hear him say anything to her, and says she saw the steps of the ladies' car, and started to get on them, and stepped off the end of the platform in attempting to do so.

"There was considerable evidence given as to the severity of the injuries received by *Mrs. Quaife*. The jury returned a verdict in favor of the plaintiffs for $1,800. The defendant's counsel requested the court to give the following instructions to the jury, which were refused, and exception was duly taken, and such refusal is alleged as error in this court.

"'1. If the fact of negligence of the defendant is doubtful, the defendant is entitled to the verdict.

"'2. It is for the plaintiffs to make out their case, and show that this accident arose from the negligence of the defendant's servants; and if the evidence leaves this point in doubt, they must find for the defendant.'

"The learned circuit judge instructed the jury upon the point presented by these requests, as follows:

" 'It is claimed upon the part of the plaintiffs, that the defendant was negligent in not having a reasonably safe platform, in not having the platform sufficiently lighted, and in not having some person stationed at the point where this accident occurred, to warn persons and prevent their walking off the platform.

" ' It will be the duty of the jury to determine, from all the testimony in the case, whether the defendant was negligent in these respects or either of them. It is the duty of the defendant to have its platform reasonably sufficient and safe in all respects to be used by such persons as may have lawful occasion to use it. It is not necessary that it should be perfectly and absolutely safe; so great a degree of perfection is usually impracticable. But it must be reasonably safe and sufficient for all persons using it, who are themselves in the exercise of ordinary and reasonable care.

" 'If a barrier or guard is reasonably necessary to prevent persons, who are themselves in the exercise of ordinary and reasonable care, from falling from the platform to their injury, then a barrier should be placed upon it, or a guard should be placed to warn people of danger. Such lights as are necessary to render the use of the platform and the passage over it to the cars reasonably safe, should be upon the platform at the time of the arrival of trains, and during the time the train remains at the station.' "

The plaintiffs had a verdict for $1,800 damages; a motion to set it aside on the grounds that it was contrary to the evidence, and that it was excessive, " and for other errors apparent on the record," was denied; and, from a judgment in accordance with the verdict, defendant appealed.

*F. J. Lamb*, for the appellant:

1. The plaintiffs must prove negligence on defendant's part,

which caused the injury without fault on their own part. If the fact of negligence be doubtful, or the evidence would justify an inference consistent with the absence as well as with the existence of negligence, the verdict should be for the defendant; and the refusal of the court so to charge was error. *Cotton v. Wood*, 8 C. B. (N. S.), 568; 29 L. J., C. P., 333; *Daniel v. Railway Co.*, L. R., 3 C. P., 216, 222, 591; 37 L. J., C. P., 146, 280; *Baulec v. Railroad Co.*, 59 N. Y., 356. 2. In any view of the case, the damages were excessive. There were no items of expense or loss proven, and by far the larger share of the award is for pain and suffering. Upon this point the testimony of the plaintiff as to the fact of her suffering is contradicted by the entire testimony of the medical experts, on both sides, all of whom swear that there was absolutely nothing wrong in the physical condition of the limb, and nothing which they could suggest as the cause of such pain. The jury have arbitrarily disregarded the proofs, and allowed their sympathies to blind their eyes to the facts. This court has frequently interposed in such cases, and if it could not, a trial would be a mere farce. *Goodno v. Oshkosh*, 28 Wis., 300; *Spicer v. Railway Co.*, 29 id., 580; *Duffy v. Railway Co.*, 34 id., 188; *Patten v. Railway Co.*, 32 id., 524; *Neanow v. Uttech*, 46 id., 581.

*William F. Vilas*, on the same side, argued that the question put to one of the physicians, admitted under defendant's objection, as to his ability to determine whether plaintiff suffered any pain, judging from his examination *including what she said*, really called on the witness to pronounce upon the credibility of her mere assertion, as against the result of the physical examination; and that it was for the jury, not the witnesses, to say how much her testimony was worth in comparison with the array of facts against her. *Wood v. Railway Co.*, 40 Wis., 582; *Griffin v. Town of Willow*, 43 id., 509; *Churchill v. Price*, 44 id., 542. He also contended that the question was not properly within the limits of a medical

opinion.   A physician may testify whether a certain disorder
which he has examined into would cause pain, and its proba-
ble character and degree.   He might also, perhaps, give an
opinion as to what affection or injury of the body, the existence
of a certain described sensation would indicate.   But when he
can find no disorder which in his opinion is adequate to cause
physical distress, he has no better means of determining in
favor of an assertion of pain by the patient than any other
person.   Expert witnesses can only be asked to deliver an
opinion upon hypothetical questions which represent what
may be fairly claimed to have been proven as facts, leaving
entirely to the jury the ascertainment of the facts.   *Dexter v.*
*Hall,* 15 Wall., 9;   *Reynolds v. Robinson,* 64 N. Y., 589;
*Woodbury v. Obear,* 7 Gray, 467;   1 Greenl. Ev., § 440;   1
Wharton on Ev., § 452;   *Luning v. State,* 2 Pin., 220;   *Wright*
*v. Hardy,* 22 Wis., 354;   *Eaton v. Woolly,* 28 id., 628.   It
was also error to permit the plaintiffs, in direct examination of
Dr. Beebe, and when he had shown his inability to testify to
any *fact* in their favor, to ask him whether there might not
have been a fracture of the neck of the femur, which he had
not been able to discover.   This was in effect deciding that the
jury might range the possibilities, in considering what ailed
the plaintiff; and permitting them to endeavor to account for
the pain on the theory of a fracture of the femur.   The
answer could be but a mere speculation, and its tendency was
to lead away the minds of the jurors from the ascertainment
of facts, and the just deductions to be drawn from facts legiti-
mately proven.   Such opinions are universally condemned in
the books as inadmissible.   *Kennedy v. The People,* 39 N.
Y., 255 et seq.

For the respondents, there was a brief by *Lusk & Perry,*
and oral argument by *Mr. Lusk.*   They contended that it was
the duty of the jury to find for the party in whose favor the
evidence, in their judgment, preponderated, although it was
not free from reasonable doubt; and that the instruction on

that point asked by defendant was properly refused (3 Greenl. Ev., p. 28, sec. 29; *Blaeser v. Insurance Co.*, 37 Wis., 35); and that the verdict should not be set aside as excessive unless it bore marks of passion, prejudice, partiality or corruption. *Bass v. Railway Co.*, 42 Wis., 672; *Birchard v. Booth*, 4 id., 78. They also contended, on the evidence, that the damages awarded were not excessive, nor even compensatory.

TAYLOR, J.   The instructions given by the court and recited above were not excepted to by the learned counsel for the defendant; and they undoubtedly presented the questions involved in them fairly to the consideration of the jury.

The learned counsel for the appellant insist that the instructions asked should have been given; that the true rule as to the sufficiency of the evidence on the part of the plaintiff, in an action charging the defendant with negligence, was correctly stated in these requests — that is, that before the jury can find in favor of the plaintiff, they must find that the evidence leaves no doubt as to the fact of such negligence.   If the rule as stated in these instructions must govern, then more plenary proof of the fact in issue would be required in these cases than is now required in criminal actions.   In such cases the jury are to be satisfied of the guilt of the accused only beyond a reasonable doubt in order to convict; but these instructions would require the jury to find the negligence of the defendant proved, not only beyond a reasonable doubt but beyond any doubt, reasonable or otherwise, before the plaintiff could recover.

We think the learned counsel is mistaken in his application of the rules of evidence to a case of this kind.   The cases cited to sustain it fall far short of doing so.   The cases most favorable to the learned counsel's proposition go no further than holding that where the evidence of negligence offered by the plaintiff is equally consistent with the absence as with the existence of negligence, then the plaintiff fails in his proofs.

*Baulec v. R. R. Co.*, 59 N. Y., 356, 366, and cases cited. But when the plaintiff's evidence tends more strongly to prove negligence than it does the absence of negligence, then, like all other questions in a civil action, the question is for the jury, and their verdict is to be governed by the preponderance of evidence, and not upon the absence of all doubt as to the truth of the facts sought to be proved. The true rule was stated by this court in *Blaeser v. Ins. Co.*, 37 Wis., 31–38, thus: "In civil actions it is the duty of the jury to weigh the evidence carefully, and to find for the party in whose favor the evidence preponderates, although it is not free from reasonable doubt;" and this rule applies to every issue of fact in the case.

In the case of *Hart v. Hudson River Bridge Co.*, decided in the court of appeals of New York, reported in the *Albany Law Journal* of February 14, 1880, p. 134, the rule as to when the question of negligence is one for the jury, is stated as follows: "It is incumbent on the plaintiff to show affirmatively that the negligence of the defendant was the sole cause of the injury; it is not necessary to do this by positive and direct evidence of the negligence of the defendant and of freedom from negligence of the plaintiff. Circumstances may be shown from which an inference of the necessary facts may be drawn; and when the circumstances are such that the inferences to be drawn are not certain and incontrovertible, but may be differently made by different minds, it is for the jury to determine them. And it is not necessary to warrant this court in adjudging that there was error in granting a nonsuit, to be convinced that the legal probabilities are so strong as that the plaintiff is entitled to a verdict." Substantially the same rule is laid down by this court in the following cases: *Duffy v. Railway Co.*, 32 Wis., 269, 273; *Patten v. Railway Co.*, id., 524, 531; *Wheeler v. Town of Westport*, 30 Wis., 392, 406; *Sutton v. Town of Wauwatosa*, 29 Wis., 21, 33.

The request of the defendant to instruct as above stated was

properly refused, and the jury were fairly instructed upon the question of the proof of negligence on the part of the defendant, as well as the proof of contributory negligence on the part of the plaintiffs.

It was claimed by the defendant, on the trial of this action at the circuit court, that the plaintiff *Mrs. Quaife* was not injured to the extent asserted by her; that she was feigning sickness, lameness and debility for the purpose of enhancing the damages; and a large part of the evidence on the part of the defense was introduced to sustain that claim. During the trial *Mrs. Quaife* submitted to an examination by six surgeons and physicians, three selected by her and three by the defendant; and, after making their examination, they were all sworn upon the trial, and all united in saying that they could discover nothing in her physical appearance which would indicate that she was suffering the pains, weakness and lameness which she claimed on her part to be laboring under, and which had been, as she claimed, continuous from the time of the accident to the day of the trial. In this state of the evidence upon this question, the learned counsel for the defendant claims that the circuit judge erred in permitting one of the medical men summoned by the plaintiff to answer the following questions:

"*Question.* Do you think that you could tell whether or not she suffered pain by the movement of the hip, judging from all the examination, including what she said? *Answer.* I think I could. *Q.* Now go on and state whether in your opinion she did suffer pain? *A.* She gave every indication of suffering pain. *Q.* In your opinion did she suffer pain? *A.* Yes, sir; that is my opinion, that she did. This pain, if it exists, indicates some trouble in the hip joint."

These questions were all objected to, and exception taken to the admission of the answers as evidence in the case. In order to determine whether the answers to these questions were properly admitted in evidence, it is, perhaps, necessary that

the whole testimony of this witness, given as well before as after the answers, should be stated. On the direct examination, and before the above questions were asked and answered, he stated:

" I am a physician and surgeon. I assisted at the examination of *Mrs. Quaife* yesterday. During the examination she seemed to be quite nervous, and more or less excited; she complained of considerable palpitation of the heart. I think she said she felt it every day more or less. I assisted in the examination of the thigh and hip. I didn't find any physical indications or signs of injury."

Here followed the questions and answers above given, and which were objected to; and, immediately after answering such questions, the witness was cross-examined, and testified as follows: "I found nothing in the hip by examination; there must be some defect in the limb to produce pain, and that defect I could not find. The general opinion was that we could not find anything. The only way I could tell that she ached was by what she said, and how she looked and appeared." On a re-direct examination he testified: "I experimented for the purpose of detecting whether there was pain or derangement of the hip joint, by striking on the bottom of the foot; and that seemed to give her pain in the hip joint." The foregoing is all the testimony given by this witness on the trial.

It is very earnestly insisted by the learned counsel for the appellant, that upon this evidence the questions were improper, for the reason that it was in effect asking the witness whether he believed the statement of the plaintiff *Mrs. Quaife*, made at the time of the examination and as a witness on the trial, that she suffered pain. It is argued that as the witness had sworn that he could find nothing in her physical condition that indicated the existence of pain, or which suggested the possibility of such pain, his answer must necessarily be based upon what she said alone; and that if based on that alone, it could only be an opinion of the witness as to the veracity of the plaintiff.

The claim of the plaintiffs on the trial was, that *Mrs. Quaife* was lame in her hip, and that she suffered pain there; that she was and had been unable to use her limb as she had used it before the accident; that it was so weakened and injured by the accident that she could not for a long time use it at all for the purpose of walking; and that it was still so weak and painful as to render it unsafe for her to attempt to walk without the aid of a crutch. The examination of physicians made upon the trial was made at the suggestion of the defendant, for the purpose of testing the truthfulness of this claim on the part of the plaintiffs, and to place before the jury the real condition of *Mrs. Quaife*, so far as such condition could be ascertained by the experience, knowledge and skill of the expert medical witnesses. The examination was promptly submitted to by *Mrs. Quaife*.

The experts, after the examination, were put on the stand as witnesses, for the purpose of giving the jury the facts ascertained by them from such examination. We are of the opinion that these experts would, in this case, be in the same position as if they had been called in any other case of sickness or injury to attend a patient, and determine, so far as they could, the real condition of such patient. In this case the patient complained of pain in the hip and lameness of the limb as amongst her troubles. The experts examine the limb and hip, and find no such appearance as would indicate lameness or pain. Yet the patient insists upon the fact of lameness and pain. It becomes then a question with the experienced physician, whether such pains and lameness are imaginary, feigned or real; and, to determine this, he must resort to other evidences than those to be derived from an examination of the limb itself. And in such case we think it is clearly competent for the expert to give an opinion from the general appearance, actions and looks of the patient, and what she says at the time in regard to her condition.

Although the examination in this case was not made for the

purpose of giving medical advice, still it was made for the express purpose of ascertaining whether the plaintiff was suffering from the existence of a present disease, and the nature of such disease; and for the ascertainment of that object the statements of the patient, or person examined, would be as necessary for the enlightenment of the medical experts as though the examination were made with the purpose of administering remedies. It is true that statements made by the person claiming to be injured, made pending an action to recover damages for such injury, might not be entitled to the same weight as if they had been made before an action commenced and for the purpose of getting medical advice; still this objection does not go to the competency of the evidence, but to its credibility.

Both parties on the trial seem to have conceded that the statements made by the plaintiff to the examining physicians were competent evidence, both for and against her; and this was undoubtedly the correct view of the case. The experts in making the examination would naturally and necessarily, in order to make a fair one, inquire of the person to be examined whether she suffered pain or otherwise, where the pains were located, how long they had existed, and such other questions as their superior knowledge and skill would suggest for the purpose of determining whether her assumed illness was real or feigned; and, having made all proper physical examinations, they would form an opinion from her statements and such physical examinations, whether the disease was feigned or real. If, in order to make a fair examination of the plaintiff by the experts, it was necessary or proper to interrogate her at all as to her present condition, then it seems to us that it is clear that, in giving an opinion as to her present condition, her answers to such inquiries must necessarily be taken into consideration, as well as her actions and appearance.

We think the rule applicable to this case is correctly stated by Chief Justice BIGELOW in the case of *Barber and wife v.*

*Merriam*, 11 Allen, 322–324: " The opinion of a surgeon or physician is necessarily formed in part on the statements of his patient, describing his condition and symptoms, and the causes which have led to the injury or disease under which he appears to be suffering. This opinion is clearly competent, as coming from an expert. But it is obvious that it would be unreasonable, if not absurd, to receive the opinion in evidence, and at the same time to shut out the reasons and grounds on which it was founded. Such a course of practice would take from the consideration of court and jury the means of determining whether the judgment was sound, and his opinion well founded and satisfactory. . . . The party producing the witness, and who relies on his opinion, should be allowed the privilege of showing that his testimony, as an expert, is the result of due inquiry and investigation into the condition and symptoms of the patient, past and present. . . . The existence of many bodily sensations and ailments which go to make up the symptoms of disease or injury, can be known only to the person who experiences them. It is the statement and description of these which enter into and form part of the facts on which the opinion of an expert as to the conditions of health or disease is founded." See, also, *Bacon v. Charlton*, 7 Cush., 581–586; *Aveson v. Kinnaird*, 6 East, 196; *Thompson v. Trevanion*, Skinner, 402; 1 Greenl. Ev., 102; *Palmer v. Crook*, 7 Gray, 418; *Rowell v. City of Lowell*, 11 Gray, 420; *Railroad v. Sutton*, 42 Ill., 438; *Denton v. State*, 1 Swan (Tenn.), 297; *Le Marchant's Gardner Peerage Case*, 78, 175, 178.

It has been held in some cases, that statements of the kind above mentioned, made after suit brought, should not be received for any purpose, not even for thé purpose of in part founding an opinion upon them by an expert. We think, however, the true rule on this point is also stated in the case first above cited. Chief Justice BIGELOW, in his opinion, page 326, says: " It is suggested, in behalf of the defendant, that

the statements in the present case were made by the plaintiff after the commencement of the action. But we do not think that for this reason only they ought to have been rejected. It was a circumstance which may have detracted from the weight of the evidence of the opinion of the physician, so far as it was founded on these statements. But as the statements were made to a medical man, for the purpose of receiving advice, they were competent and admissible." And so, in this case, the defendant having called for personal examination of the plaintiff, by expert witnesses, for the purpose of determining whether the plaintiff was suffering from disease or injury, and with a view of having those witnesses testify as to the results of such examination, and give their opinions if called upon, the plaintiff had the right to have them take into consideration her statements made upon such examination, in making up their opinions as to her present condition.

It would have presented a different question, if the plaintiff on her part, without the knowledge or presence of witnesses for the defendant, had called experts to examine her as to her present condition, for the purpose of giving evidence on the trial, and not for the purpose of giving medical advice. In that case the objection would perhaps have been well taken, that in forming an opinion as to her condition the witnesses should not be allowed to take into consideration her statements made at such examination. In such case the statements would be subject to a suspicion that they were made for the purpose of getting an opinion favorable to her. In the present case, the examination was not sought by her, and her statements were made in answer to interrogatories put by experts, who are supposed to be impartial, if not hostile, to her, and all her statements were made subject to a full cross-examination by the experts, so that there would be very little probability that they would be misled or influenced by any colored or false statements. We think the questions and answers were admissible, and that it was for the jury to say what

weight should be given to the opinion under all the circumstances.

It is objected that the court erred in permitting the following question to be put and answered by one of the plaintiffs' witnesses, Dr. Beebe: " Might there not have been a fracture of the neck of the femur, and you not be able to discover it? " *Answer.* " That may be in the range of possibilities, but not probable; the usual organic changes and usual symptoms accompanying that fracture were not present."

This witness was one of the six who had made the personal examination of the plaintiff during the trial, and, although called by the plaintiff, had testified that in such examination he had discovered nothing in her physical condition which indicated that she was suffering pain from the alleged injury at the time. The witness, though necessarily called by the plaintiff, as one who had been selected by her to assist at the examination, did not testify very favorably to her; and it was in the discretion of the court whether a question in the nature of cross examination should be allowed to be put by the party calling him. It is not denied but that the question would have been a proper one to put to the witness on cross examination, had he been called by the defendant. The object of the question was, to show that an injury might exist, and did in fact exist, although there were no outward manifestations.

This exact question was before the supreme court of Massachusetts in the case of *Rowell v. City of Lowell,* 11 Gray, 420; and that court held that such a question was proper upon the cross examination of a surgeon testifying as an expert. In the present case, although the question was put upon direct examination, it was put to a witness who, although called by her, had not testified favorably; and there was no error, therefore, in permitting the question.

The point made that the plaintiffs were permitted to contradict one of their own witnesses, by way of impeachment, is hardly sustained by the record. The record shows that the

witness referred to, Dr. Booth, was recalled by the defendant
as its witness, for the purpose of contradicting a statement
sworn to by the plaintiff *Quaife;* and that after he was exam-
ined by the defendant, the plaintiff cross examined him, and,
without any objection on the part of the defendant, he testi-
fied as follows: "I did not tell *Quaife,* a day or two after
the accident, that I jumped off the forward end of the car on
the platform, and had *only just time* enough to get on as they
started. I got off the rear end of the smoking car, and went
to the other end, and saw my man, and got on at the forward
end." The plaintiff *Mr. Quaife* was recalled, and on this
subject stated, "that, a day or two after the accident, Dr.
Booth stated to him that he got off the rear end of the smok-
ing car, and jumped on to the forward end of the smoking car
just as they were starting."

It will be seen, by an examination of the two statements,
that they do not conflict in any material part. The record
also shows that no objection was taken to the statement made
by the witness *Quaife* on the ground that it was intended to
impeach his own witness, but simply on the ground that the
evidence was not rebutting.

The questions as to the nature and gravity of the injuries
received by the plaintiff *Mrs. Quaife* were fairly and clearly
submitted to the jury by the learned circuit judge. And, as
a basis for assessing damages, they were told, in the strong
language of the learned counsel for the defendant, that
"although the jury might guess that some other injury might
have been received by *Mrs. Quaife,* at the time in question,
than is proved by the evidence, it is improper for the jury to
do so. The jury are instructed not to do so, but to confine
themselves to the consideration of such injuries, and only
such injuries, as are proved by the evidence given in court
to have been received by *Mrs. Quaife* at the time in question."

If the evidence of the learned surgeons and physicians who
made the examination of *Mrs. Quaife,* one of whom had

attended her from the time of the accident, failed to convince the jury that her injuries were of a trifling character, and that she was feigning sickness and decrepitude for the purpose of enhancing her damages; and if the learned doctors, after making a thorough examination of her condition at the time of the trial, were unwilling to give it as their opinion upon oath that her injuries were slight and temporary in their nature, and that she was simulating lameness and disease — it would be presumptuous for this court to decide this issue of fact against the verdict of the jury, upon the evidence given in this case.    It will hardly be expected that we can say, upon the evidence given on the trial, that the finding of the jury that her injuries were serious and permanent in their nature is unsupported by the facts proved; and, unless we can so say, the verdict must stand.    The verdict is not excessive, except upon the theory that the evidence shows so clearly that the injuries were trifling and temporary, that the verdict of the jury to the contrary must be set aside as entirely unsupported. Most certainly the evidence does not show this.    We are unable, therefore, to say, as a matter of law, that the damages assessed are excessive.

The case seems to have been fairly tried, and the judgment of the circuit court must be affirmed.

*By the Court.* — Judgment affirmed.