GUSTAV B. ZELLER ET AL. *v.* SYLVIA MAYSON
MAX RUBENSTEIN ET AL. *v.* SYLVIA MAYSON
[Nos. 18, 19, April Term, 1935.]

*Decided May 22nd, 1935.*

The causes were argued before URNER, OFFUTT, PARKE, MITCHELL, and JOHNSON, JJ.

*William L. Marbury, Jr.,* with whom were *Julian de Bruyn-Kops, Jr.,* and *Marbury, Gosnell & Williams,* on the brief, for Gustav B. Zeller and Western Maryland Dairy Corporation, appellants.

*H. Beale Rollins,* for Max Rubenstein and Peerless Cab, Inc., appellants.

*Milton Leven,* for the appellee.

MITCHELL, J., delivered the opinion of the Court.

This case embraces two appeals in one record from the Court of Common Pleas of Baltimore City. On the 23rd day of February, 1934, Sylvia Mayson, who at that time was employed as an entertainer at the Oasis Cabaret, a public resort located at Frederick and Baltimore Streets, in the City of Baltimore, having completed her duties for the night's entertainment, at about two A. M. left the cabaret in company with Patricia Lamonte, who was a coemployee, and a Mr. Shipley, a guest of the cabaret. In front of the establishment the party hailed a taxicab driven by the defendant Rubenstein, trading as the Peerless Cab, Inc.; and the driver was instructed first to take the party to 1912 North Castle Street, which was the home of the plaintiff. Upon reaching this point, however,

and without leaving the taxicab, they continued their journey to the Midway Tavern, another public resort, located in the southwest section of the city. On the journey between the two resorts, Mr. Shipley and the two other passengers occupied the rear seat; the driver being alone on the front seat. Arriving at the Midway Tavern, they remained for a short while, leaving the latter resort around 3.30 A. M.; and upon their return, Miss Lamonte occupied the front seat of the cab, the other two passengers continuing to occupy the rear seat. The course of the return trip took them to Baltimore Street and then eastwardly on Baltimore Street; and when reaching the intersection of Liberty and Baltimore Streets, the cab collided with a dairy truck belonging to the Western Maryland Dairy Corporation, also known as the Fairfield-Western Maryland Dairy, approaching from the north and driven by Gustav B. Zeller, its employee. The evidence adduced by the respective parties as to the speed at which they were driving at the time of the accident, as well as to the distance from the point of intersection at which each observed the other approaching the intersection, is, as usual in such cases, conflicting; but the physical facts adduced by the testimony of the two drivers located the point of collision at approximately the center of the intersection of the two streets, although it is impossible, from the evidence, to determine which motor vehicle first reached and entered the street intersection. Both the taxicab and truck were considerably damaged, and both vehicles came to a stop at or near the southeast corner of the intersection of the two streets. As a result of the collision, the plaintiff received extensive lacerations over the forehead, numerous other lacerations over her entire face and jaw, injury to her teeth, bruises on the left side of the neck, and serious bruises about her body, especially her right hand, knees, and ankles. By virtue of these injuries she was confined in Mercy Hospital for nearly a week, and at other places for nearly three and a half months. She also suffered from in-

somnia, and was under the care of her physician for five and a half months. Miss Lamonte was also injured.

The record contains fourteen exceptions, thirteen of which deal with rulings on evidence, and the fourteenth with the ruling of the trial court on the prayer. All of the exceptions as to rulings on evidence were abandoned in this court except Nos. 1 and 11; and these will be dealt with in their order.

At the conclusion of the plaintiff's testimony, and after she had exhibited scars on her face, neck, and forehead, her counsel offered to exhibit to the jury the injuries to her knees, to which formal objection was made by the defendants Zeller and the Dairy Corporation. Counsel for plaintiff stated that the reason for his desire to have his client exhibit her knees was because of her occupation, she having tesified that her vocation was that of an entertainer, dancer, and singer, and the disfiguration of her knees vitally affecting her in this respect; and the court stated, in explanation of its ruling, that while ordinarily such scars upon the knees of a plaintiff would not be an element of significance, in view of the plaintiff's occupation the objection was overruled. Thereupon the plaintiff was permitted to exhibit her knees to the jury. The admission of this form of evidence, it must be conceded, was entirely in the discretion of the trial court, and we can see no impropriety or error in its ruling. The plaintiff had testified that she had two brush burn wounds on her knees, the scars of which remained. The exhibition of her knees merely corroborated her oral testimony in this respect, and, if anything, was additional evidence incumbent upon her to meet the burden of proof. In *Chicago & A. R. Co. v. Clausen*, 173 Ill. 100, 50 N. E. 680, 682, the plaintiff was injured by the sudden starting of a railroad train on which he was a passenger, while he was attempting to alight therefrom. At the trial, over objection, he was permitted to exhibit to the jury the rupture alleged to have been a consequence of the accident. Upon appeal, the Supreme Court of Illinois, in affirming the action of the lower court, said: "It is primarily within

the discretion of the trial court to permit an injury to be shown to the jury for any legitimate and proper purpose that will aid in the determination of the issue, and this is conceded by counsel; but it is contended that in this case there was an abuse of discretion, because the existence of the rupture, and the nature and extent of it, were not controverted by' the defendant; and this was stated to the court when it was proposed to make the exhibition. It is questionable whether the exhibition was proper under the circumstances, and whether its only effect would not be to excite feeling, rather than to aid in settling any disputed question; but we do not feel prepared to say that such was the case, or that there was a clear abuse of the discretion confided to the trial court." And in *Wagner v. Chicago, R. I. & P. Ry Co.*, 277 Ill. 114, 115, N. E. 201, 203, the same court said: "Whether one who is injured may exhibit an injured member to the jury is primarily in the discretion of the trial court, and it is properly exercised in any case where the personal view will aid the jury in understanding the evidence." See, also, 52 *A. L. R.* 1396. The general principle laid down in *Abbott's Civil Trials*, p. 393, is concisely stated as follows: "The Court may allow a witness testifying in his own behalf respecting injuries to his person, to exhibit the injured part to the jury. * * * The propriety of the practice cannot be questioned on the ground that the exhibition would tend to unduly excite the sympathy of the jury by reason of the youth and comeliness of the witness, who is a female. *Omaha St. Ry. Co. v. Emminger*, 57 Neb. 240, 77 N. W. 675." And this principle is approved in 1 *Greenleaf on Evidence* (16th Ed.) p. 31, secs. 13 (f) and 13 (g) ; and 2 *Wigmore on Evidence*, secs. 1158, 1159.

The eleventh exception raises the question as to the admissibility of evidence showing the prior conviction of Zeller, the driver of the dairy truck, in the Traffic Court of Baltimore City, for failing to give the right of way upon the occasion of the accident which forms the basis of the instant case. The witness Zeller having testified that he had given evidence in the traffic court in regard to

this same accident, his entire testimony in that court was read to him, and he corrected one statement in it relating to the distance that he first saw the cab coming down Baltimore Street. He was then asked what disposition was made of the case in the traffic court, which was objected to, and the court said: "In so far as this witness alone is concerned, the objection is overruled." The witness thereupon answered that he was fined twenty-five dollars and costs for failing to give the right of way. In the trial of a civil suit for damages arising from an accident, it is within the discretion of the court to permit testimony to be given by a party to the case as to the disposition of criminal charges against him growing out of the same accident; and its action will not be disturbed unless it clearly appears to have been an abuse of such discretion. *Nelson v. Seiler,* 154 Md. 63, 139 A. 564; *General Exchange Ins. Corporation v. Sherby,* 165 Md. 1, 165 A. 809. Such testimony has been held to be admissible under some circumstances, not in order that the civil jury may adopt the judgment of a criminal tribunal in lieu of their own proper determination of the controverted facts, but as tending to impair the credibility of the evidence given by the witness individually with respect to a matter germane to the question at issue, which was also in issue at the hearing on the criminal charge. The jury should be made aware of the relative importance to be attached to such evidence; and in this case the court's qualified admission of the testimony was followed up by the submission and granting of a prayer, on behalf of the defendants Zeller and Dairy Corporation, who alone might have been injured by such evidence, in which the jury were instructed that the conviction of Zeller in the traffic court was not controlling in the civil case on trial. They therefore received this evidence properly safeguarded, and were at liberty to consider it for the limited purpose for which it was admitted.

In *Mattingly v. Montgomery,* 106 Md. 461, 68 A. 205, 208, the plaintiff was run down and injured by a horse and wagon, which she testified was being driven very

fast; but this speed was denied by the defendant's driver. The court permitted the plaintiff to prove by the driver, over the objection of the defendant, that he had been arrested and paid a fine for fast driving on the occasion of the same accident. On appeal the judgment was affirmed, this court saying: "There was decided conflict between the testimony of Harmison (the driver) and the plaintiff's witnesses as to the speed he was driving when he reached the tracks and when he attempted to cross. The credibility of the witness was, therefore, directly in issue upon a material point, and the fact proved tended to impair the weight of his evidence, and was properly admitted without the production of the record of conviction." The facts in that case are identical with the present case, except that here the criminal charge was "failure to give the right of way," instead of "fast driving." In this case, too, the testimony was conflicting as to who had the right of way.

The rule with respect to the admission of this class of evidence is not now as broad as in the past, and is becoming increasingly constricted with advancing years. Greenleaf and Wigmore, in their respective works on Evidence, after thoroughly canvassing a great mass of decisions on this point, incline to the theory that the better practice would be to avoid all reference, in civil cases, to the action taken on criminal charges arising from the same subject-matter. However, as stated, in this case the jury were given the evidence in controversy with instructions for its restricted consideration; and we cannot say that the trial court abused its discretion in this regard.

The fourteenth exception relates, as hereinbefore stated, to the ruling on the prayers. The only prayers embraced in this exception, to which objections are pressed in this court, are the defendants Zeller and the Dairy Corporation's A and B prayers, and the defendants Rubenstein and Cab Corporation's A prayer, all of which were rejected by the trial court. The A prayer of the defendants Zeller and Dairy Corporation asked a

directed verdict in their favor because of no legally sufficient evidence of negligence on their part to entitle the plaintiff to recover; and their B prayer asked a similar verdict because from all the evidence in the case it appeared that the plaintiff was guilty of negligence which directly contributed to the happening of the accident complained of. There was evidence adduced in the case tending to show that the dairy truck operated by Zeller was, at the time of the accident, being driven recklessly, and that it was driven beyond the north line of Baltimore Street, at its intersection with Liberty Street, after the taxicab driven by Rubenstein had entered the intersection, approaching from the dairy truck driver's right. Under this state of facts, it was not the province of the court to weigh the conflicting testimony, but, in our opinion, the jury was entitled to pass upon its sufficiency. 2 *Poe Pl. & Pr.*, sec. 295 (a).

It is contended by the appellants that the plaintiff was guilty of contributory negligence because, being seated on the rear seat of the taxicab, she could have noticed Rubinstein, the driver, engaged in conversation with Miss Lamonte, a fellow passenger on the front seat, and could have noticed the alleged attempt of the driver to put his arm on the back of the seat. It is testified by Miss Lamonte, however, referring to this action on the part of the driver, that she told him she did not like it, "so he put both hands on the wheel and still continued to talk, but after putting his hand up there once, and me telling him not to do it, he didn't do it again."

"Q. Well, now, how far away from the scene of the accident was it that he put his arm up over the back of the seat? A. Oh, it was about—as I told you, he started to talk to me about halfway home from the Midway Tavern, and he probably talked to me two or three minutes and put his hand up there, and I told him I didn't like it. Q. Well, I say, how far away from the scene of the accident was that? A. I don't remember exactly. Q. Well, was it a few feet, or a few yards, or a few blocks? A. Oh, no, it was blocks. Q. And then you say after you

protested he took his hand down and kept both hands on the wheel? A. That's right."

Clearly, if the single act above detailed was observed by the plaintiff (and it follows that if she saw the driver place his arm on the back of the seat, she was also in a position to observe him remove it), there was no duty incumbent upon her to warn him to do what he had done without warning. Besides, this act of the driver took place blocks away from the scene of the accident, and could have no bearing on the charge of contributory negligence against the plaintiff. It can hardly be logically contended that a conversation engaged in by the driver of a motor vehicle with a passenger sitting beside him is an act of negligence; and we cannot conclude that the failure of the plaintiff to protest against the conversation was an act of contributory negligence. In the case of *Merrifield v. C. Hoffberger Co.,* 147 Md. 134, at page 137, 127 A. 500, 501, in dealing with a similar prayer, this court, speaking through Judge Digges, said: "The law, as declared by this court and supported by the great weight of authority elsewhere, is that, to justify the trial court in withdrawing the case from the consideration of the jury on the ground of contributory negligence by the plaintiff, the evidence must show some prominent and decisive negligent act on the part of the plaintiff which directly contributed to the accident, and was the proximate cause thereof, and that this negligent act must be of so prominent and decisive a character as to leave no room for difference of opinion thereon by reasonable minds. *Baltimore & O. R. Co. v. Hendricks,* 104 Md. 76, 84, 64 A. 304; *Cooke v. Baltimore Traction Co.,* 80 Md. 551, 558, 31 A. 327; *Taxicab Co. of Baltimore v. Emanuel,* 125 Md. 246, 93 A. 807. In the case last cited, at page 259, 93 A. 807, we said: "The act relied on to establish as a matter of law the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and attributes of an act, relied on to show negligence contributing to an injury sustain-

ed, can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law." The above statement of the law was affirmed in the case of *Chesapeake & Potomac Tel. Co. v. Merriken,* 147 Md. 572, 577, 128 A. 277, 279, by Judge Offutt, when he stated: "These principles have been so often and so recently stated by this court that it is unnecessary to do more than refer to *Merrifield v. C. Hoffberger Co.* [147 Md. 134], 127 A. 500 and *Pearson v. Lakin* [147 Md. 1], 127 A. 387, in which Judge Digges and Judge Parke respectively, speaking for this court, collected and reviewed the later decisions involving them." This doctrine has since been approved by this court in many decisions.

What we have said with reference to the B prayer applies with equal force to the A prayer of the defendants Rubenstein and Cab Corporation, and therefore it is unnecessary for us to discuss the last-mentioned prayer further in this opinion.

Finally, there is a question attempted to be raised before this court, and argued in the appellants' briefs, based upon the refusal of the trial court to grant motions for a new trial, filed by the respective defendants, and a special motion to strike out the verdict and grant a new trial, jointly filed by the defendants, upon an affidavit of one Judson K. Kirby to the effect that John H. Segwalt, one of the jurors who rendered the verdict, during the interval in which the case was being tried, visited the Oasis Cabaret. The affidavit is purely hearsay evidence, and for that reason alone should not be considered. Motions for a new trial are addressed to the sound discretion of the court, and from its action in granting or refusing them, whether absolutely or on terms, no appeal will lie. 2 *Poe's Pl. & Pr.,* sec 349. This same principle is affirmed in the case of *Washington, B. & A. Electric R. Co. v. Kimmey,* 141 Md. 243, 250, 118 A. 648, 650, wherein Judge Urner said: "The general rule is that the disposition of a

motion for a new trial is within the sound discretion of the trial court and is not a subject of appeal." *Chiswell v. Nichols,* 139 Md. 442, 115 A. 790, 791; *Stern v. Bennington,* 100 Md. 344, 60 A. 17. As was said in *Chiswell v. Nichols, supra:* "If the question could be brought before us at all by an appeal it could only be a bill of exceptions, or certificate of the lower court, bringing before us such evidence as that court had before it in passing on the motion." It might be added that no such exception or certificate of the lower court is found in the record.

Finding no error in the rulings of the trial court, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*