YELLOW CAB CO. *v.* BARBARA J. HENDERSON
SAME *v.* EUELL C. HENDERSON
[Nos. 11 and 12, October Term, 1944.]

*Decided November 1, 1944.*

The causes were argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, BAILEY, CAPPER, and HENDERSON, JJ.

*H. Beale Rollins* and *Samuel S. Smalkin* for the appellant.

*I. Duke Avnet* and *William Taft Feldman* for the appellees.

BAILEY J., delivered the opinion of the Court.

The Yellow Cab Company has appealed from two judgments entered against it in the Baltimore City Court. In No. 11, the plaintiff, Barbara J. Henderson, a three-year-old child, by Euell C. Henderson, her father and next friend, sued Yellow Cab Company and Sun Cab Company, Inc., for personal injuries sustained by her in an accident on March 14, 1943, at the intersection of Broadway and North Avenue in Baltimore City. In No. 12, the plaintiff is the father, who sued the same defendants for loss of personal services and medical expenses incurred by reason of his daughter's injuries. The cases were consolidated and tried before a jury. At the conclusion of the plaintiffs' evidence the Court

548

granted prayers for instructed verdicts in favor of the defendant, Sun Cab Company, Inc. The cases were subsequently submitted to the jury as to the other defendant, Yellow Cab Company. The verdicts of the jury being in favor of the plaintiffs, judgments were entered thereon against Yellow Cab Company and it is from these judgments that it has appealed.

At about 6 o'clock in the afternoon of March 14, 1943, Henderson, his wife and two daughters were passengers in a taxicab of the Sun Cab Company, which was proceeding in a northerly direction on Broadway. The four passengers were sitting on the rear seat with Henderson on the right and his daughter, Barbara, between his legs. As the taxicab was approaching North Avenue and when it was about 100 or 150 feet from the south side thereof, the driver stopped when hailed by a prospective passenger who was not taken on. As the taxicab started, the traffic light at the intersection changed from red to green. The Sun Cab was proceeding across the intersection on the green light at a medium rate of speed and had reached the northerly street car tracks on North Avenue when Henderson saw a Yellow Cab fifteen feet to his right driving in a westerly direction on North Avenue at "a pretty good speed." The Yellow Cab struck the Sun Cab on the right side between the two doors. As a result of the collision the infant plaintiff, Barbara Henderson, was thrown out of her father's arms and against the door.

Henderson further testified that Barbara had vomiting spells the night of the accident, and that on the following day, her face was swollen, her left eye was completely closed and that there were cuts over the left eye and on her head.

The witness Braun, a traffic engineer with the Baltimore City Police Department, whose duty was the supervision, installation and maintenance of signs and signals, testified that the traffic signal at this intersection remained green on Broadway for a period of twenty-three seconds, with an additional amber light super-

imposed on the green for the last four seconds. There was no evidence in the record that the light was not working properly on the day of the accident.

The witness Tawney was walking west on the north side of North Avenue, east of Regester Street, when he heard an unusual noise behind him. Upon turning he saw the Yellow Cab coming at a speed of about forty miles an hour. He watched it until it reached Regester Street, and while he did not observe the cab between Regester Street and Broadway, he had taken only a few steps when the crash occurred. He proceeded immediately to the scene of the accident and found the driver of the Yellow Cab lying on his back between the two automobiles.

At the conclusion of the testimony the appellant offered prayers in both cases asking for instructed verdicts on the ground that there was no affirmative evidence of negligence on the part of the driver of the appellant's taxicab legally sufficient to require the submission of the cases to the jury. The prayers were rejected. This ruling of the trial court constitutes the fifty-fourth exception.

This Court has held repeatedly that a case will not be withdrawn from the jury for the want of legally sufficient evidence if there is any evidence, however slight, legally sufficient as tending to prove negligence, competent, pertinent and coming from a legal source, but that the weight and value of such evidence will be left to the jury. *State v. Carroll-Howard Supply Co.,* 183 Md. 293, 37 A. 2d 330; *Taxicab Co. v. Hamburger,* 146 Md. 122, 125 A. 914; *Taxicab Co. v. Emanuel,* 125 Md. 246, 93 A. 807; *Geiselman v. Schmidt,* 106 Md. 580, 585, 68 A. 202; *Sun Cab Co. v. Reustle,* 172 Md. 494, 192 A. 292. The evidence which we have outlined above meets this test. From it the jury could have found that there was negligence on the part of the driver of the Yellow Cab in entering the intersection on a red light or in driving at an unlawful rate of speed, and that such negligence was the proximate cause of the accident. We find that the

trial court committed no error in rejecting the demurrer prayers.

The fifty-fifth exception embodies the appellant's objections to the Court's oral instruction to the jury. These objections were not pressed in the appellant's brief or in its oral argument. We are, therefore, justified in treating this exception as abandoned. Rules and Regulations Respecting Appeals, Rule 39, Sec. 4, 1943 Supplement, Annotated Code of Maryland, p. 1175. However, we have examined the instruction and are of the opinion that it properly stated the law of the cases and that it fairly reviewed the evidence, with a reminder that the jury are the judges of the fact. *Feinglos v. Weiner,* 181 Md. 38, 28 A. 2d 577.

The fifty-sixth exception, relating to the preparation of the record, was abandoned by the appellant. The fifty-second exception complains of the trial court's action in refusing demurrer prayers at the close of the plaintiff's case, but since the appellant thereafter proceeded with its defense, it thereby waived its right to have this ruling reviewed. *Poe, Pleading and Practice,* Vol. 2, Sec. 295B, and cases there cited; *Ashman, Directed Verdicts and Instructions,* p. 173; *Carroll v. Kerrigen,* 173 Md. 627, 635, 197 A. 127.

The remaining exceptions, one to fifty-one, inclusive, and fifty-three relate to the trial court's rulings on the evidence. We shall not attempt to discuss each of the exceptions separately. Many of them may be conveniently grouped and considered together. The first group embodies the appellant's objections to the testimony of Dr. Joseph S. Blum, who was the family physician and who attended Barbara on the night of the accident and thereafter until the day of the trial. His testimony is in part as follows: "On March 14, I was called to attend Barbara Henderson, who had been a patient of mine for several years previous to that. As the family doctor, I have seen the family before, and particularly this child. I was told the child was in an accident, and received injuries, and examination disclosed that there

were numerous signs of violence, such as abrasions or that is, discolorations and bruises, marks about the forehead and large discoloration around the left eye, with swelling and a lacerated or split upper lip, on the inside of the cheek, marks about both shoulders, the back and around the thighs. These were the external signs of violence. Besides these signs, the child was vomiting and crying with pain, complaining of headache. The vomiting and headache and limited motion of the arms lasted for a period of two weeks during which time I kept her under constant observation in bed. The vomiting has never subsided until the present time completely, because where formerly she had very little tendency to vomit, she has been vomiting, according to the complaint of the mother on numerous occasions since this episode. Another condition that has existed up to the present time is a noticeable drooping of the left lid. After the swelling had cleared up, this drooping of the left lid and an abnormal turning inward of the left eye-ball was noticed by myself on every occasion that I examined her since then the last being about two weeks ago. On the basis of these injuries I had her X-rayed about a week following the sustaining of these injuries and the report by an X-ray specialist was there was no fracture of the skull. External exidences of the injuries sustained had disappeared, but the eyelid drooping and the turning inward of the eyeball on certain directional movements of the head is still present."

Dr. Blum further testified that the child had concussion of the brain and that the muscle over the left eye was damaged; that that there would be no permanent injuries as a consequence of the concussion; but that the damage to the muscle over the left eye had caused a drooping of the upper lid which would be permanent; and that this permanent condition of the left eye was due to a blow or injury to the muscle supporting the upper lid received by her in the accident on March 14, 1943.

All of this testimony was objected to by the appellant on the ground that the symptoms were related to Dr. Blum by the child's mother, who was not called as a

witness and that his opinion, based in part upon this history, was inadamissible. In the case of *Sellman v. Wheeler,* 95 Md. 751, 754, 54 A. 512, 514, this Court quotes from *Greenleaf,* Vol. 1, Sec. 102, 14th Edition, as follows: "The representations by a sick person of the nature, symptoms, and effects of the malady under which he is suffering at the time are original evidence. If made to a medical attendant they are of greater weight as evidence; but if made to any other person, they are not on that account rejected."

In an annotation in 65 A. L. R., page 1223, it is stated that the opinion of a physician as to the condition of an injured person is not rendered incompetent by the fact that it is based upon the history of the case given by the patient to the physician on his examination of the patient, when the examination is made for the purpose of the treatment and cure of the patient. See cases there cited.

An opinon by a physican that the physical conditon of a patient is the result of injury and shock is not incompetent, when it is derived from his own knowledge, attendance, treatment, and examination of the patient, though based in part upon her statements and complaints, made at different times as to her pains and suffering. *Denver & R. G. R. Co. v. Roller,* 100 F. 738, 41 C. C. A. 22, 49 L. R. A. 77

In the case of *Elgin, A. & S. Traction Co. v. Wilson,* 217 Ill. 47, 75 N. E. 436, it is stated that a physician who has treated a patient may express an opinion as to his physical condition, based on information gained while attending him.

In the instant case the attending physician received the history from the patient's mother and not from the three-year-old child herself. But this does not render his evidence, partially based thereon, inadmissible. In *Wigmore on Evidence,* 3rd Edition, Sec. 688, the general rule is stated as follows: "When a physician examines a patient to ascertain his ailment and to prescribe for it, a portion of his reasons for action must be the patient's

own statements. To exclude testimony not wholly independent of this foundation for opinion is, in strictness, to exclude almost always medical testimony based on a personal examination." And in further discussion of this rule in the same section the author says: "But where the information is that of an *attending nurse or physician* having personal observation and an interest in learning and describing accurately, there seems every reason for admitting testimony based in part on this. Every physician relies upon it, and there are periods of sleep or other unconsciousness or mental incapacity which make it impossible to resort to the patient for information. It should be immaterial whether the informant is a professional person, or is the wife or other member of the household, so long as the information is based on attendance and personal observation." *State Realty Co. v. Ligon,* 218 Ala. 541, 119 So. 672; *People v. Black,* 367 Ill. 209, 10 N. E. 2d 801; *Fuller v. State,* 213 Ind. 144, 10 N. E. 2d 594; *Southern K. R. Co. v. Michaels,* 57 Kan. 474, 46 P. 938; *Cleveland R. Co. v. Merk,* 124 Ohio St. 596, 180 N. E. 51. While there are decisions to the contrary (*Ingles v. People,* 90 Colo. 51, 6 P. 2d 455; *Atchison, T. & S. F. R. Co. v. Frazier,* 27 Kan. 463; *Heald v. Thing,* 45 Me. 392, 395; *Aronovitz v. Arky,* Mo. Sup., 219 S. W. 620; *State v. Hadley,* 65 Utah 109, 234 P. 940), we adopt the view expressed by Mr. Wigmore, supra, and hold that the evidence of Dr. Blum, the attending physician, was admissible in its entirety, even though based in part upon information received by him in his professional capacity from the child's mother, who was in fact the child's nurse and attendant.

The next group of exceptions relates to the testimony of Dr. Harold C. Dix, a specialist in diseases of the eye, ear, nose and throat, who examined Barbara three times in 1943, on August 20, August 25 and September 25. His testimony is objected to on two grounds: First, that his opinion is based, in part, upon the history as related to him by the child's mother, and second, that he should have been propounded an hypothetical question, embrac-

ing all the testimony, including the happening of the accident and the condition of the child after the accident. It is suggested in the appellant's brief that Dr. Dix was consulted merely for the purpose of testifying in the case, but a careful reading of the record does not sustain this contention. Dr. Blum testified that Barbara was sent by him to Dr. Jerome Snyder, a specialist, who, at the time of the trial was in the Army. The record is silent as to the reason for the procurement of the services of Dr. Dix, another specialist. It is as reasonable to assume that it was for the purpose of treatment after the departure of Dr. Snyder as to assume that it was solely for the purpose of testifying. There are many cases which hold that the opinion of a physician as to the condition of an injured person, based wholly or in part upon the history of the case, as told to him by the latter on a personal examination, is inadmissible where the examination was made for the purpose of qualifying the physician to testify as a medical expert. 65 A. L. R. 1219 and cases there cited. But there are some well-reasoned cases holding the contrary view, including *Consolidated Traction Co. v. Lambertson,* 60 N. J. L. 452, 38 A. 683; *Quaife v. Chicago & N. W. R. Co.,* 48 Wis. 513, 4 N. W. 658, 33 Am. Rep. 821; *Fulmore v. St. Paul City R. Co.,* 72 Minn. 448, 75 N. W. 589; *Chicago R. I. & P. R. Co. v. Jackson,* 63 Okl. 32, 162 P. 823; and *Baltimore & Ohio R. Co. v. Mangus,* 294 F. 761. From the record in this case we can see no distinction between the positions of Dr. Blum and Dr. Dix and we cannot hold that his testimony was rendered inadmissible because it was based upon the history related to him by the child's mother as well as upon his personal examination on three separate occasions.

The second objection to Dr. Dix' testimony has been answered by this Court in the recent case of *Langenfelder v. Thompson,* 179 Md. 502, 20 A. 2d 491. At page 508 of 179 Md., and at page 494 of 20 A. 2d, the Court, speaking through Judge Delaplaine, says: "Where a medical expert is familiar with the facts of an accident and

the nature of the injuries, he is competent to testify whether the injuries were caused by the accident, without the necessity of having the facts in evidence recounted to him before he gives his opinion." The Court pointed out, however, that: "The opinion of an expert, the grounds upon which it has been formed, and the weight to be accorded to it are all matters for the consideration of the jury." In the present case there is no dispute regarding the nature of the accident and the manner in which the plaintiff was injured, but the sole question, in so far as the testimony of Dr. Dix is concerned, is whether the condition of the left eye of the infant plaintiff was the result of the accident. Then, as stated in *Langenfelder v. Thompson,* supra, 179 Md. at page 509, 20 A. 2d at page 494, "there is no impropriety in directly asking the attending physician to state what in his opinion had caused the condition." We have already stated that, from the record, we have concluded that Dr. Dix was an attending physician.

In the fortieth exception the appellant objects to the questioning of the plaintiff, Henderson, as to the giving of a signal by the driver of the Yellow Cab as he approached the intersection. His answer was that none was given and the refusal of the trial court to strike out this answer constitutes the forty-first exception. In view of the testimony in this case that the Yellow Cab entered the intersection on the red light, we feel that the question of whether or not a signal was given is immaterial. The fact that Henderson did not hear any horn is some negative evidence that a horn was not blown. *Sudbrook v. State,* 153 Md. 194, 138 A. 12. We can see no prejudice to the appellant in the Court's rulings in these exceptions.

The fifty-first exception challenges the action of the Court in allowing the infant plaintiff, Barbara Henderson, who was not called as a witness and who, because of her age was incompetent to testify (28 R. C. L. 463), to be exhibited to the jury so that they might see the injuries, if any, resulting from the accident. In the case

of *Zeller v. Mayson,* 168 Md. 663, 179 A. 179, the plaintiff, a professional dancer, was permitted to exhibit her injured knees to the jury. The Court stated that the admission of this form of evidence was entirely in the discretion of the trial court. This view is also expressed in *Wigmore on Evidence,* 3rd Edition, Sec. 1158. Mr. Wigmore states that the trial court should firmly exercise its discretion to prevent the abuse of such a mode of proof. We feel that the exhibition was entirely proper in the instant case. The jury was entitled to make its own observation as to the nature of the injuries to the infant plaintiff. The fact that she was not called as a witness does not alter the rule. We find no abuse of the trial court's discretion.

In the fifty-third exception the appellant offered in evidence the testimony given by Gayhardt, the driver of the Yellow Cab, at a hearing in the Traffic Court of Baltimore City, with the explanation that Gayhardt had been returned *non est* on numerous occasions and that his present whereabouts were unknown. The general rule is that testimony given in one proceeding cannot be used in another unless the witness giving it is dead or is beyond the jurisdiction of the Court and the parties and questions in issue are substantially the same. 20 Am. Jur. 582; *Annarina v. Boland,* 136 Md. 365, 111 A. 84. In the present case the parties are entirely different from the parties in the hearing in the Traffic Court. This, in itself, renders the former testimony inadmissible, and the Court did not err in refusing to admit it.

In the appellant's brief it is argued that the witness Tawney should not have been permitted to testify as to the speed of the Yellow Cab when it crossed Regester Street, which was a block east of the scene of the accident. We have carefully examined the record and find that all of Tawney's testimony was received without objection from the appellant. There being no objection and consequently no exception, there is nothing for this Court to pass upon.

As the other exceptions to the evidence were not discussed by the appellant either in the brief or in the oral

argument before this Court, we are treating them as abandoned. *Rules and Regulations Respecting Appeals, supra.*

Finding no reversible error in the rulings of the Trial Court, the judgments will be affirmed.

*Judgment in No. 11 affirmed, with costs.*

*Judgment in No. 12 affirmed, with costs.*