RODOLPHE AUCLAIR *vs.* THEODE LEGARE.

May 28, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J.   This is an action of trespass on the case for negligence in which, after a jury trial in the superior court, a verdict was returned for the plaintiff in the sum of $1,985.90.   The defendant's motion for a new trial was heard and denied.   The case is here on his exceptions to that decision and to certain rulings during the trial.

The facts disclosed by the evidence centered around the alleged negligence of defendant's cab driver when plaintiff and some companions, all of whom came from a nearby cafe about 1:30 p.m. on September 19, 1951, were entering or

about to enter the cab "to go and pick up some worms" for a contemplated fishing party. Whether plaintiff was to go on the trip and what occurred at the time of the accident was the subject of conflicting evidence. The testimony for plaintiff in substance was that after two of his friends had entered the cab and while he had one foot therein it suddenly started, as a result of which he sustained an injury to his right leg in the region of the knee. On the other hand, defendant claimed that the cab had already started with its doors closed when plaintiff, apparently intending to go with his companions who were in the cab, grabbed the handle of the door, lost his balance and suffered the injury to his knee. A further detailed statement of the conflicting testimony would serve no useful purpose.

The defendant's first exception is directed to a ruling of the trial justice at the outset of the trial. It appears that twenty-six jurors had been summoned for service at the session of the superior court in Woonsocket. Twelve of them were out deliberating on a previous case when the instant case was called for trial. The defendant objected to the impaneling of a jury from the remaining fourteen spare jurors, contending that he was entitled to have in the jury box, commonly called the barrel, the names of twenty jurors before he was legally obliged to proceed with the trial of his case. This contention was based solely on his deduction from the provision of general laws 1938, chapter 507, §2, which gives to each party the right to "not exceeding 1 in 4" peremptory challenges in a case. He forcefully argued to the trial justice, as he does here, that if he were ordered to proceed with the selection of a jury when only fourteen jurors were available, both he and plaintiff would be deprived of a right guaranteed by law.

The trial justice denied the motion with the understanding that if, because of peremptory challenges by either side, a satisfactory jury could not be secured from the fourteen spare jurors, the parties as well as the court would have to

wait until the other jury above mentioned had returned its verdict. We note here that the contingency which defendant feared did not arise and a jury satisfactory to the parties was in fact secured from the then fourteen remaining jurors.

The selection of a petit jury is controlled by G. L. 1938, chap. 506. Section 34 of that chapter provides, among other things, that "when an issue is brought on to be tried by the jury * * * before the verdict in any other case has been recorded * * * the court may order a jury for the trial of such issue to be impaneled, by the drawing in manner aforesaid, of cards from those then *remaining in the box*," meaning the jury barrel. (italics ours) Reasonably construed, said provision presupposes that at the time of such drawing there are at least twelve jurors available for service. If upon the exercise of the right to the peremptory challenges accorded the parties by G. L. 1938, chap. 507, §2, a satisfactory jury is not obtained from the then spare jurors, it necessarily follows that everybody must wait until additional jurors are available or, as here, until those deliberating on a previous case have returned their verdict.

The trial justice committed no error in the circumstances of record. The ground for delay urged by defendant was speculative in character and, as a matter of fact, proved to be without prejudice when a competent and acceptable jury was drawn within the number of jurors then ready to serve. A different although in some aspects an analogous situation confronted the court in *Barber* v. *James,* 18 R. I. 798. In that case the defendant objected on the ground that more than twelve jurors had been summoned for service. The court held that the contention was without merit since he was able to secure "the twelve good and lawful men required." To sustain defendant's contention in the instant case would not only disregard the plain meaning of chap. 506, §34, but would also confuse our heretofore unquestioned

procedure in jury trials. The exception under consideration is overruled.

The next exception relates to the ruling of the trial justice allowing plaintiff to exhibit his injured knee to the jury, defendant claiming that such exhibition would be prejudicial to him in that, according to medical testimony previously given, it showed the effects of certain operations performed some thirty years before as well as the result of the operation which was required by the injury sustained in the case at bar. Although we have found no decision of our own which is in point, it is generally held that permission to exhibit an injured member to the jury lies in the sound discretion of the trial court which will not be interfered with except in case of abuse. 32 C.J.S., Evidence, §§602, 610; 20 Am. Jur., Evidence, §720; 4 Wigmore on Evidence (3d ed.) §1158.

The following cases from among the many decisions cited in the foregoing authorities are illustrative of the situation presently under consideration. The exhibition to the jury of a foot was held without error in *Sears* v. *Goldsmith,* 136 Ore. 151; of a knee in *Packet Co.* v. *Hobbs,* 105 Tenn. 29; and of a leg in *Stacy* v. *Williams,* 253 Ky. 353. In *Zeller* v. *Mayson,* 168 Md. 663, the court found no error in allowing plaintiff, a professional dancer, to exhibit her injured knees against objection that such exhibition would incite the jury's sympathy unduly because of her youth and comeliness. Irrespective of how one may view the ruling in the *Zeller* case, there was no such opportunity for arousing undue sympathy for the plaintiff in the circumstances of the case at bar. Since the visible results of both the recent and old operations upon plaintiff's knee were fully described and distinguished by medical evidence before he testified, it was not unreasonable to allow him to exhibit his injured knee to the jury so that it could more clearly determine the extent of the injury thereto that was sustained in the present accident. The exception is overruled.

23

Under his next exception defendant contends that the trial justice erred in denying his motion for a new trial. After careful examination of all the testimony it is our judgment that the evidence was open, either directly or by reasonable inferences, to different and opposite conclusions as to which reasonable men could differ. In the circumstances we cannot say that the trial justice, who had the opportunity of seeing and hearing the witnesses while testifying and therefore was in a better position than we are to appraise their credibility, was clearly wrong in refusing to grant the defendant a new trial. This exception is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the verdict.

*Jean Paul Soucy*, for plaintiff.

*James E. Flannery*, for defendant.